THE STATE OF OHIO, APPELLEE, *v.* CRAMPTON, APPELLANT.

(No. 68-533—Decided June 11, 1969.)

*Mr. Harry Friberg,* prosecuting attorney, *Mr. Melvin L. Resnick* and *Miss Alice L. Robie,* for appellee.

*Mr. John J. Callahan* and *Mr. Gerald S. Lubitsky,* for appellant.

TAFT, C. J. Defendant's first contention is that a person accused of murder in the first degree is denied his constitutional right to a fair trial when veniremen are excused for cause from serving as jurors because their opinions preclude them from finding the accused guilty of an offense punishable with death.

Our decision in *State* v. *Pruett* (1969), 18 Ohio St. 2d 167, and the reasons stated in the opinions in *Witherspoon* v. *Illinois* (1968), 391 U. S. 510, 20 L. Ed. 2d 433, 88 S. Ct. 1770; *Boulden* v. *Holman* (1969),    U. S.   , 22 L. Ed. 2d 433· and *State* v. *Pruett, supra,* require us to reject this contention.*

---

*In the instant case, 33 jurors were examined on *voir dire.* Of these, 29 were interrogated as to their opinions on capital punishment. Admittedly four of the 29 stated positively that their opinions *would preclude them from finding the accused guilty of an offense punishable with death,* and those four were excused when challenged for cause by the prosecutor. No other juror was excused on a challenge for cause because of his opinions with respect to capital punishment.

Defendant further complains about the charge of the court with respect to insanity.

It may be noted that the state also objected to this charge. Apparently, this charge on insanity was substantially the same as the charge given on that subject in *State* v. *Keaton* (1967), 9 Ohio App. 2d 139, 223 N. E. 2d 631, with the addition at the end thereof of the substance of what is stated in paragraph fifteen of the syllabus of *State* v. *Frohner* (1948), 150 Ohio St. 53, 80 N. E. 2d 868, and in paragraph four of the syllabus of *State* v. *Stewart*, 176 Ohio St. 156, 198 N. E. 2d 439, both of which syllabi paragraphs were followed in paragraph one of the syllabus of *State* v. *Staten* (1969), 18 Ohio St. 2d 13. As the opinion in the *Keaton case* recognized, and as we recognized in footnote 5 of *State* v. *Staten, supra,* the charge in the *Keaton case* was too favorable to the accused. In our opinion, therefore, the defendant in the instant case could not have been prejudiced by the charge given on insanity.

Defendant also complains because the court sustained objections to certain hypothetical questions propounded to a Doctor Neverauskas.

On November 4, 1966 this doctor had been assigned as staff physician for defendant, who had been previously admitted because of his drug addiction to Toledo State Hospital on an order of detention of the Probate Court of Lucas County.

This doctor testified as to his examination of defendant, his admitting diagnosis and the treatment prescribed for defendant at the hospital.

Defendant's counsel propounded to this doctor a hypothetical question with respect to defendant, premised upon evidence theretofore presented, and then asked the doctor's opinion as to whether or not the mind of the defendant was "deranged or diseased to such an extent that the alleged criminal act was the product of defendant's deranged or diseased mind."

Two of the grounds for objection to this question were (1) that the witness had not been qualified as an expert,

and (2) that the question was not based upon the proper test for determining legal insanity.

It may reasonably be inferred from the record that the trial court sustained the objection on the first ground.

It is not necessary for us to consider whether the objection was properly sustained on that ground. Even if we assume that the witness had been properly qualified as an expert, it is obvious that the question and the proffered affirmative answer are based upon the so-called Durham test for legal insanity (See *Durham* v. *United States* [C. A. D. C. 1954], 214 F. 2d 1862), which test was rejected by this court in *State* v. *Staten, supra* (18 Ohio St. 2d 13). Hence, there was no error in sustaining the objection to that question.

Thereafter, other hypothetical questions were asked of Doctor Neverauskas, and his answers were proffered. We disregard the fact that the proffered answers were not responsive to the questions. To the extent that those answers *might* support defendant's insanity defense under the law of this state, those answers were to the effect that, because of defendant's excessive use of drugs (*i. e.,* amphetomines), defendant was unable to restrain himself from doing what he knew he was doing and from what he knew was wrong.

However, this doctor had already testified that, if this defendant (who had been his patient) excessively used such drugs, he would be unable to so restrain himself.

Hence, we are of the opinion that defendant was not prejudiced by the refusal of the trial court to permit Doctor Neverauskas to answer those hypothetical questions.

This conclusion is fortified by the fact that another expert called by defendant testified as Doctor Neverauskas would have testified in answer to those hypothetical questions.

Thus, we conclude that, where an expert witness has testified that excessive use of certain drugs would prevent an accused who had recently been his patient from restraining himself from doing a criminal act, it is not prej-

udicial error to sustain an objection to a hypothetical question calling for the opinion of the same witness as to whether such use would prevent the accused from restraining himself from doing that same act.

Defendant next contends that Section 2901.01, Revised Code, providing that anyone "guilty of murder in the first degree * * * shall be punished by death unless the jury trying the accused recommends mercy," is unconstitutional.

In so contending, defendant argues that this statute compels a person "to be a witness against himself" within the meaning of those words as used in Section 10, Article I of the Ohio Constitution, and the Fifth Amendment to the Constitution of the United States.

Defendant argues that, if an accused elects to assert his right against self-incrimination, he can not present any evidence which would tend to mitigate on the question of his punishment.

This is obviously not true. Defendant can, as he did in the instant case, present such testimony by witnesses other than himself.

Thus, defendant's contention is reduced to one that, if he elects to assert his right against self-incrimination, he, himself, can not testify on the question as to whether the jury should recommend mercy; and that if he decides to testify on that question, he exposes himself to cross-examination by the state as to his guilt; and he thereby is compelled to be a witness against himself contrary to the Fifth Amendment to the United States Constitution. In other words, defendant contends that, in effect, he is required by Section 2901.01, Revised Code, to incur the detriment and thereby pay the price of waiving his right against self-incrimination on the issue of his guilt in order to testify on the issue as to his punishment.

This is an ingenious argument.

However a similar argument could be made (1) where a defendant claims an alibi and desires to testify in support of that claim, (2) where a defendant claims self-defense and desires to testify in support of that claim,

and (3) where a defendant contends that he is at most guilty of a lesser included offense and desires to testify in support of that contention.

In our opinion, there is no reasonable basis for concluding that an accused is deprived of his Fifth Amendment right against self-incrimination by a procedure under which the jury, which determines an accused to be guilty of first degree murder, is authorized to determine whether mercy should be recommended so that the penalty should not be death.

Defendant contends that the punishment of death by electrocution for the crime of murder in the first degree, where the jury does not recommend mercy, violates the constitutional prohibition against cruel and unusual punishments.

It is not argued that the penalty of death by electrocution is any more cruel or unusual than death by the historical methods of hanging or shooting. Thus, defendant's contention must amount to one that the punishment of death for the crime of first degree murder violates the constitutional prohibition against cruel and unusual punishments.

The crime of first degree murder is the most serious crime in this state and, in the instant case, required a finding by the jury, beyond a reasonable doubt, of an intentional killing with deliberate and premeditated malice. If any crime will support the death penalty, this crime will.

In our opinion, defendant's contention is completely answered by the provisions of the Fifth Amendment, which refer to "a capital * * * crime" and which mention being "twice put in jeopardy of life" and being "deprived of life * * * without due process," as well as by the provisions of the Fourteenth Amendment against "any state" depriving "any person of life * * * without due process."

It is further contended that the punishment of death for first degree murder where the jury does not recommend mercy deprives a person of due process and equal protection of the law.

It seems to us that it would be just as logical to ar-

gue that an accused convicted of any crime is denied due process and equal protection of the law because the Governor may, without any standards to guide him, pardon some other accused who has been convicted of the same crime.

In our opinion, there is no merit to this contention. *In re Anderson* (Cal. 1968), 447 P. 2d 117, *Petition of Ernst* (C. P. 3, 1961), 294 F. 2d 556, certiorari denied, 368 U. S. 917.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

MATTHIAS, SCHNEIDER, HERBERT and DUNCAN, JJ., concur.*