**George Robert BROWN, Petitioner-Appellant,**

v.

**Russell LASH, Warden, Indiana State Prison, Respondent-Appellee.**

**No. 17581.**

United States Court of Appeals, Seventh Circuit.

Sept. 30, 1970.

Max Cohen, Gary, Ind., for appellant.

William F. Thompson, Asst. Atty. Gen., of Ind., Mark Peden, Deputy Atty. Gen., Theodore L. Sendak, Atty. Gen., of Ind., Indianapolis, Ind., for appellee.

Before SWYGERT, Chief Judge, and KILEY and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

This is an appeal from a denial of habeas corpus. Petitioner George Brown was convicted in an Indiana court of first degree murder. The jury decreed the death penalty. In a state coram nobis proceeding, petitioner claimed, among other things, that his trial counsel, Mr. Stenhouse, was ineffective, that his confession was involuntary, and that evidence of other crimes had been improperly introduced. His coram nobis petition was denied.

Petitioner filed in federal district court the application for writ of habeas corpus now under consideration. He alleged that his confession was involuntary and that Mr. Baker, Public Defender, who had appeared for him at the coram nobis hearing, had failed to provide effective assistance of counsel in establishing coercion. He also challenged the imposition of the death penalty on various constitutional grounds, procedural and substantive.

The district court, after hearing, found that Mr. Baker had fulfilled the minimum standards for effective assistance of counsel. The court declined to rule on the matter of exclusion of jurors oppposed to the death penalty since the Indiana courts had not had an opportunity to consider a claim of that nature since Witherspoon v. Illinois.[1] Other points had apparently been ruled on orally, adversely to petitioner, and the petition was denied. Petitioner appealed.

Petitioner's conviction occurred December 13, 1957. The case has a long history and execution has been stayed from time to time.[2]

1. (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

2. Petitioner's conviction was affirmed in Brown v. State (1958), 239 Ind. 184, 154 N.E.2d 720, cert. denied, without prejudice to application for writ of habeas corpus, 361 U.S. 936, 80 S.Ct. 375, 4 L.Ed. 2d 360. An application to the district court was dismissed (1960) for failure

### The Confession.

Petitioner Brown was an inmate of the Lake county jail throughout April, 1957. He had been free on bail, charged with theft, and failed to appear for trial. He was brought to the jail March 31, after apprehension in Nevada. While Brown was in the jail, the Gary police referred a tip that Brown had told his wife about killing a woman the summer before and concealing her body. Mrs. Brown was contacted and showed the deputies the place Brown had pointed out. The deputies dug, but found nothing. In sequence that is somewhat in dispute, they questioned him at times at the jail and took him one or more times to the site; he made oral admissions and signed a detailed confession. Thereafter he admitted many other offenses.

He related that on a rainy evening the summer before he picked up a woman walking along the highway after her car had stalled, he had parked off the main route, had choked her to death, pulled her body off the road, and covered it with stones; he took her purse, and, after removing her money, burned the purse and buried the remnants at his home. With this information, the deputies were able to find the body a short distance from the area where they had looked earlier. With Brown's help, they recovered the partially burned purse and contents at Brown's home.

The contents of the purse contained papers of Mrs. Mildred Grigonis. Her husband and sister identified the purse and contents, a denture, and a pin. She had failed to return home after work the evening of August 17, 1956. Her car had been found at the location described by Brown.

### The coram nobis proceeding.

Brown supported his claim that his confession was not voluntary by assertions that he was subjected to protracted questioning and that threats and inducements were made. In his coram nobis petition he alleged the questioning lasted approximately two weeks, and in his habeas corpus petition, a period of five to seven days.

The state's position is that no threats or inducements were made and that the questioning which led up to the confession of the Grigonis murder took place only during the afternoon and evening of Monday, April 29, 1957. The deputies testified, and certain records indicate, that the tip from the Gary police was received about 10:30 p.m. Saturday, April 27, the written confession was dated April 29 at 8 p.m., and the body was found Tuesday, April 30. Brown reenacted the events on April 30 and made an additional oral admission May 1. It

to exhaust state remedies. Brown filed a petition for writ of error coram nobis in the Indiana trial court. It was denied. The state public defender who had appeared for him at the coram nobis hearing refused to obtain a transcript or assist on appeal, and the state trial and supreme courts denied a transcript and appointment of other counsel. Brown v. State (1961), 241 Ind. 298, 171 N.E.2d 825, cert. denied without prejudice to an application to a district court for habeas corpus, 366 U.S. 954, 81 S.Ct. 1906, 6 L.Ed.2d 1246. Petitioner obtained a federal order requiring his release unless the state provided him an appeal. United States ex rel. Brown v. Lane (N.D.Ind., 1961), 196 F.Supp. 484; United States ex rel. Brown v. Lane (7th Cir., 1962), 302 F.2d 537; Lane v. Brown (1963), 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892, decided the same day as Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, and Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, which brought about a vast expansion in the practice of criminal law, as well as Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. Present counsel for petitioner was then appointed by the trial court. The denial of coram nobis was later affirmed, Brown v. State (1966), 248 Ind. 11, 221 N.E.2d 676, cert. denied, 387 U.S. 925, 87 S.Ct. 2043, 18 L.Ed.2d 981, reh. denied, 389 U.S. 891, 88 S.Ct. 23, 19 L.Ed.2d 208. The petition for writ of habeas corpus now under consideration was filed December 29, 1967.

is clear that Brown was questioned about other offenses up to May 8. His confession of the rape and murder of Lana Brock is dated May 1, at 6 p.m., his confession of several assaults is dated May 4 at 12:30 p.m.; and a deputy testified at trial he was questioned about other events May 7 and 8.

The coram nobis hearing was held June 1, 1960. Mr. Baker, on Brown's behalf, read his petition into the record, and it was accepted as evidence. The petition detailed his claim with respect to protracted questioning and threats, as well as other claims. The transcript of the trial was also submitted. At trial however, there had been no objection to the confession and no real exploration as to its voluntary character. At the 1960 hearing, the deputies who had been active in the investigation, Chief Singer, Uzelac, and Garapich, testified. Several others who had been on duty at the jail were called. All denied making any threats or inducements. Brown testified in rebuttal.

Mr. Stenhouse, Brown's counsel at trial, testified that he did not object to the admission of the confession; he discussed it with Brown, who hold him it was true and given freely and voluntarily. Stenhouse testified that Brown had not told him of any of the facts on which Brown based his present claim that the confession was inadmissible. Brown testified he had told these things to Stenhouse.

The trial court made no particularized findings of fact; the record shows only an order that Brown's petition was denied.

### New Evidence.

Brown's present counsel, Mr. Cohen, presented in the habeas corpus hearing several items of evidence which were not presented at the coram nobis hearing. Some of these tend, arguably, to corroborate Brown's claim that he was questioned over a longer period about the Grigonis murder and to corroborate a threat he attributed to a guard at the jail.

Some of the new evidence arguably tended to show (1) that the tip which initiated the investigation which uncovered the Grigonis killing was not received April 27, but earlier; (2) that more than 2 days intervened between the tip and the confession; (3) that one officer at the jail expressed hostility and made a threat; (4) that Brown had been taken from his cell and stripped; and (5) that some of the relevant records were not maintained in ordinary course. (6) It is also argued that the confession was really made April 30 and dated back to April 29.

(1) *The April 27 date.* Bard, the Gary officer who relayed the tip, testified that he was not on duty Saturdays, such as April 27, 1957. The records of a weather observatory, only a few miles from the site of the killing indicate that on April 27 the total precipitation was .71 inches, but that there was no precipitation after 6 p.m. The last previous day on which there had been precipitation throughout the evening and into the early morning hours was April 17. The total precipitation on April 17 was .52 inches. At the 1957 trial, Uzelac testified, in describing the place pointed out by Mrs. Brown the evening the tip was received, "it had just rained previous and it was awful wet." In a deposition in 1968 before the habeas corpus hearing, he testified to the effect that there was a slow misting rain continuing during all the evening hours and until 2 a.m. If the latter description be correct, the weather records indicate the date was Wednesday, April 17, not April 27.

(2) *Duration of questioning.* Bard testified that Uzelac called him several days after the tip and said they weren't getting anywhere with Brown. Bard said a week to ten days elapsed between the tip and the confession. Jackson and Quinn had been inmates in the so-called criminal section of the jail at the time Brown was in that section. Jackson testified that Brown was taken out two or three times a day for several hours and that a week to ten days elapsed from the time Brown was brought to that part of

the jail until Jackson learned Brown had confessed killing a woman. Quinn testified similarly except he estimated the time at close to two weeks. It does appear that Brown was questioned from April 29 to May 8, but the testimony of the deputies is that almost all the questioning after April 30 related to other matters.

(3) *Threat.* One of the threats alleged by Brown, but attributed to a deputy other than Singer, Uzelac, or Garapich, was:

> "Mildred Grigonis is a blood relative of mine. If you don't make a confession and tell us where you hid her body, I'll come in that cell and hang you. I ought to come in there and hang you whether you confess or not. * * *"

Mr. Grigonis had reported his wife's disappearance to the police. The record does not show, however, whether the deputies linked Brown with her disappearance until they found papers bearing her name.

Jackson testified that when an officer brought Brown into the section he told Brown that Brown had killed a relative of his and if he had a chance, he would hang Brown. Jackson understood the relative referred to was the beautician (Mrs. Grigonis). Quinn testified that the officer said that if he got the chance, he'd cut Brown's throat. Brown, Jackson, and Quinn were each unable to identify the officer. No witness, including Mr. Grigonis and his son, knew anything about Mrs. Grigonis being related to any officer. It appeared that Lana Brock, another victim of Brown, was the niece of an East Chicago police officer, but the record does not indicate any contact between Brown and that officer. Moreover her body had been found the previous October.

(4) Jackson also corroborated Brown's claim that a deputy had taken Brown from his cell and forced him to remove his clothing. There was testimony how-ever, that any incident which might have been referred to was a search.

(5) *The records.* A form called an "Offense Report" indicates the tip was received at 10:30 p.m. April 28 (Sunday). It contains a narrative describing the tip, the interview with Mrs. Brown and the first digging at the spot she pointed out. Testimony as to the usual practice shows that if this report had been made out Sunday, April 28, the date of the tip being really, April 27, it would have been given a serial number Monday, April 29. The number it bears, however, is subsequent to the serial number given a report on another case May 3.

A card entitled "Prisoner's Record" is made out for each inmate of the jail. These cards are filed by serial number and kept permanently. Few if any have been lost, but Brown's card can not be found. Presumably it would record the date on which he was transferred to the criminal section of the jail.

(6) *The date of the written confession.* The confession is dated April 29 at 8 p.m. Brown claims that it was made April 30. This claim is predicated upon references in the text to locations pointed out to the deputies "this afternoon". Brown reenacted the events April 30, after the body was found. The confession, however, contains no reference to the finding of the body or purse, nor the identity of the victim. There is one version of testimony and one document indicating that Brown had been taken to these locations Monday, April 29 after his first oral admission and before the confession was put in writing. Brown's claim (6) is not very persuasive.

The issue submitted to the district court at the habeas corpus hearing was whether Mr. Baker had rendered effective assistance of counsel at the coram nobis hearing. The district court was not asked to, nor did it, reach the ultimate issue whether the confession was involuntary. The district court found that Mr. Baker was a well qualified and experienced attorney, fully capable of

rendering the assistance to which Brown was entitled. Mr. Baker is now deceased, but his associate testified concerning Mr. Baker's activity in connection with Brown's case before the coram nobis hearing and the record of that hearing was before the district court. The district court found "that although there may have been more that could have been done in preparing for the hearing, what was done was sufficient to satisfy the requirements of due process of law. * * * The facts in this case at bar clearly show that the conduct of the Public Defender was not such as to reduce the coram nobis hearing to a farce, a sham, or a travesty of justice."[3]

We would have no difficulty in concluding that the finding was not clearly erroneous.

### The sufficiency of the coram nobis hearing.

With all respect, however to counsel and to the district court, we think that the fact that Brown had counsel at the state post-conviction hearing does not necessarily establish that the facts were adequately developed there, nor bar him from an evidentiary hearing in federal district court on the voluntariness of his confession.

The ultimate constitutional issue raised by Brown is whether Brown's will was overborne and his confession involuntary. He alleged enough in terms of protracted questioning, threats, and inducements to entitle him to a reliable determination of the relevant facts and the ultimate issue by a trier of fact. He was entitled to an evidentiary hearing and findings in the district court unless the district court was required to, or could properly, deem the factual issues adequately resolved by the state court in the coram nobis proceeding.

The threshold question is to be answered by applying 28 U.S.C. § 2254(d). It provides that a state court determination of a factual issue, properly evidenced, shall be presumed to be correct unless one or more listed conditions be established. The presumption is rebuttable, but the petitioner has the burden of doing so by convincing evidence. The subsection was enacted in 1966, and the list is similar in part to the list set forth in Townsend v. Sain.[4] *Townsend* held that if one or more of the listed conditions exists, a federal evidentiary hearing is required.

Subsection (d) operates only where the state court determination is "evidenced by a written finding, written opinion, or other reliable and adequate written indicia". The only written determination in the coram nobis proceeding was that the petition was "denied". Under the circumstances however, we think the denial fairly implies a negative factual finding on Brown's claim rather than any other rationale of decision.

Condition (3) in subsection (d) specifies "that the material facts were not adequately developed at the State court hearing". This corresponds to Condition (5) in the *Townsend* list. In discussing Condition (5) the Supreme Court said, "The conventional notion of the kind of newly discovered evidence which will permit the reopening of a judgment is, however, in some respects too limited to provide complete guidance to the federal district judge on habeas. If, for any reason not attributable to the inexcusable neglect of petitioner * * * evidence crucial to the adequate consideration of a constitutional claim was not developed at the state hearing, a federal hearing is compelled."[5]

3. The court cited United States v. Dilella (7th Cir., 1965), 354 F.2d 584, 587; Lunce v. Dowd (7th Cir., 1958), 261 F.2d 351, 354; Lunce v. Overlade (7th Cir., 1957), 244 F.2d 108, 110; United States ex rel. Feeley v. Ragen (7th Cir., 1948), 166 F.2d 976; MacKenna v. Ellis (5th Cir., 1960), 280 F.2d 592.

4. (1963), 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770, 786.

5. *Townsend*, 372 U.S. p. 317, 83 S.Ct. p. 759.

■ We have summarized the new evidence under six headings. It is not all equally significant, and we have already indicated that (6) is not persuasive. The state court made its credibility determinations between Brown and the witnesses adverse to him and weighed the evidence without the corroboration afforded Brown by the testimony of Bard and the two jail inmates. Because the district court limited its consideration to the effectiveness of counsel, the district court has never determined credibility, or weighed testimony as between those adverse to Brown, on the one hand, and Brown, Bard, and the two inmates on the other. Under the circumstances the failure to produce the new evidence at the coram nobis hearing can not be charged to Brown as inexcusable neglect.[6] We conclude that the facts were not adequately developed at the coram nobis hearing and an evidentiary hearing and findings on the factual issues are required in the district court.

*Challenges to death sentence.*

We need deal only briefly with the attack on the death sentence since there will be further proceedings in the district court to determine whether the conviction itself is valid.

The death sentence issues are:

(1) The "Witherspoon" issue: whether the exclusion for cause of jurors expressing scruples against the death penalty violated Brown's rights.

(2) Whether the determination of guilt and penalty in one verdict violated his rights.

(3) Whether the death penalty is cruel and unusual punishment.

(4) Whether failure to prescribe standards to guide the jury in considering the penalty violated his rights.

■ Witherspoon v. Illinois [7] was decided after Brown filed his petition in the district court. The court reasoned that although it would have been fruitless for Brown to have raised issue (1) in the Indiana courts at the time he filed his petition, *Witherspoon* has sufficiently changed matters so that it is appropriate to afford the Indiana courts the first opportunity to consider this issue in Brown's case. We agree, and think that the other death sentence issues should be submitted to the Indiana courts along with (1).

The Attorney General of Indiana, by brief, has assured the court that Indiana Supreme Court Rule P.C.1 provides a proceeding in which Brown could present at least issue (1), and that he will not be barred by having raised other claims in his coram nobis proceeding.

We note that the Supreme Court of the United States has granted certiorari in cases involving issues (2) and (4).[8]

Our study of the record moves us to note that when and if death sentence issues (2) and (4) are reached for consideration, such issues are highlighted in this case because of the mass of evidence of other offenses which was before the jury. This evidence was held competent, since Brown had raised the issue of insanity.[9] The defense of insanity failed, but the evidence of the other offenses may well, it seems, have affected the jury's choice of the death penalty. It is true, of course, that other offenses committed by a convicted person normally are considered in fixing the penalty. Usually, however, these matters are separately considered at a

---

6. See Fay v. Noia (1963), 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837.

7. (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

8. State v. Crampton (1969), 18 Ohio St. 2d 182, 248 N.E.2d 614, cert. granted, 398 U.S. 936, 90 S.Ct. 1847, 26 L.Ed.2d

268; People v. McGautha (1969), 70 Cal.2d 770, 452 P.2d 650, cert. granted 398 U.S. 936, 90 S.Ct. 1846, 26 L.Ed.2d 267.

9. Brown v. State (1958), 239 Ind. 184, 154 N.E.2d 720, 721.

stage where the accused may speak in answer without waiving his right of silence before verdict of guilt.

Brown was only 24 when he killed Mrs. Grigonis, and there is evidence that he killed her when she resisted his sexual advances. He had been committed to the reformatory for a sexual assault at age 16. From age 20 to 23 he was under commitment to a hospital as a dangerous sexual psychopath. In May, 1957 he admitted a number of sexual assaults in the fall of 1956 and winter of 1957. Not only were his written statements brought before the jury, but the officers testified to his oral admissions, and three of the victims testified. One of the offenses was the abduction, rape, and murder of Lana Brock, a 16 year old girl, in September 1956. Not only was his written statement introduced but the girl's mother testified, photographs of her body were received, and the physician who performed the autopsy testified that she must have still been living when Brown buried her in a pile of sand after the assault.

In Brown's case, such issue of guilt as existed was raised by the defense of insanity. That defense having failed, the jury determined the penalty in the same verdict and after hearing the same evidence. It seems clear that Brown's offenses were in some degree the product of his abnormality, although the Indiana definition of the defense of insanity was not fulfilled. For Brown, the price of attempting the defense of insanity was to put this mass of highly unfavorable information before the jury without any guidance on the considerations appropriate in choosing the penalty.

Mr. Max Cohen of the Gary, Indiana bar has served most diligently as counsel for Brown ever since his appointment by the Indiana trial court in 1963. We are grateful for his dedicated service.

The order appealed from is reversed and the cause remanded for an evidentiary hearing and further proceedings consistent with the opinion. The stay of execution of the sentence of death is continued in force until further order of the district court.