Robert JONES, Jr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.
William GILDON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

May 15, 1970.

As Modified on Denial of Rehearing
Oct. 2, 1970.

John Tim McCall, Louisville, for appellant William Gildon.

Matthew B. Quinn, Jr., Louisville, for appellant Robert Jones, Jr.

John Breckinridge, Atty. Gen., James H. Barr, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

On a joint trial, William Gildon and Robert Jones, Jr., were each convicted of armed robbery, and Jones also was convicted on an habitual criminal charge of having previously been convicted of a felony. Gildon was given a 10-year sentence on his conviction, which is the minimum for armed robbery under KRS 433.140. Jones was given a sentence of 16 years, being double the time of the sentence under the conviction for the previous felony, and again this was the minimum that could have been imposed under KRS 431.190 and 433.140. Gildon and Jones have taken separate appeals from the judgments of conviction, and their appointed counsel also have appealed from orders overruling the counsels' motions for allowance of fees for representing the defendants. These appeals have all been considered together, on the one record, and will all be disposed of in this opinion.

Following a brief statement of the facts we shall first discuss the grounds of error asserted by Gildon (two of which are asserted also by Jones); next those by Jones; and finally the question of compensation of appointed counsel.

Gildon and Jones were charged with the armed robbery of Gordon's Bar in Louisville. On the trial the bartender and a waitress identified them as the culprits positively and unequivocally. In a car owned by Gildon, which the police saw leaving the general area of the crime and pursued until it stopped and its two occupants ran off, were found a long-barreled pistol described by the bartender, the waitress and several patrons of the bar as being similar to that used in the robbery, and a black scarf and a red scarf which the patrons said were similar to ones worn by the robbers. Gildon and Jones were found by the police, within an hour after the robbery, in a room in an apartment house in the area into which the occupants of the automobile had fled. They were panting and out of breath. Protruding from the pocket of a

pair of trousers in the room were some sales slips with the name "Gordon's Bar" written on them, and in the pocket the sum of approximately $360 was found, which was the estimated amount that had been taken from the bar in the robbery. Gildon did not testify but Jones did, his testimony being that he and Gildon had not been out together; he had been looking for Gildon because the latter had some clothes belonging to him; he found Gildon in Jimmy Sanders' apartment (where he and Gildon were found and arrested); he wanted Gildon to get his clothes but Gildon said that Sanders had gone with Gildon's car to take a girl home; he (Jones) left the apartment alone but shortly went back and found that Sanders had returned; a few minutes later the police arrived and arrested him and Gildon.

Neither of the appellants makes any contention that the evidence was not sufficient to sustain the convictions of armed robbery. This can well be understood because the evidence of guilt was overwhelming.

Gildon's first contention is that the trial court erred in overruling his motion for a separate trial. He maintains that he was entitled to a separate trial because (1) Jones was being tried as an habitual criminal; (2) Jones took the stand, thereby subjecting himself to impeachment by the showing that he had been convicted of a felony in addition to the one covered by the habitual criminal charge; (3) the prosecuting attorney loudly announced that it would be shown that "one of these men has been in the penitentiary;" (4) the fact that Jones took the stand, while Gildon did not, tended to create an inference to the jury that Gildon was guilty; and (5) the defenses of the two men were antagonistic.

■ It is true that in Hardin v. Commonwealth, Ky., 437 S.W.2d 931, we stated that we were inclined to think that to be joined for trial with a defendant being tried under the habitual criminal statute would be inherently prejudicial to a defendant who was not accused under that statute; and in reversing the convictions of the defendants in that case, on other grounds, we directed that on the new trials a severance be granted. *Hardin* does not, however, stand for the proposition that there is a *conclusive* resumption of prejudice that cannot be overcome by any circumstances. It means only that when the pre-trial motion for severance is made, the trial court should sustain the motion on presumptive prejudice; it does not mean that error of the trial court in not granting the severance is automatically reversible error without regard to actual prejudice. As in the instance of any other error, the appellate court addresses consideration to the question of prejudice. Abernathy v. Commonwealth, Ky., 439 S.W.2d 949.

■ In the final analysis, all of the five reasons stated by Gildon in support of his contention that he should have been granted a separate trial are specifications of bases for *prejudice* calculated to result from a joint trial. If viewing the trial in retrospect, it is clear that there was in fact no prejudice, there is no occasion for a reversal. Here the evidence of guilt was overwhelming and the penalties imposed were the minimums. Under these circumstances the error must be considered harmless. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

■ Gildon's second contention is that the trial court erred in overruling his motion that a mistrial be declared because of allegedly prejudicial statements made by the prosecuting attorney. The statements consisted of a couple of indirect comments on Gildon's failure to testify, a reference to the fact that Jones had been in the penitentiary, a suggestion that if the defendants were told the name of an informer they would "have a good citizen killed," a mention of the fact that the defendants had 20 peremptory challenges available to them whereas the Commonwealth had only 6, and in inference, in a question asked Jones on cross-examination, that he had been convicted of numerous felonies. We have

held that indirect references to a defendant's failure to testify are not prejudicial if not unduly repeated or emphasized. See Anderson v. Commonwealth, Ky., 353 S. W.2d 381. In the instant case there were two references, following the second of which the court, at the request of Gildon's counsel, admonished the jury that Gildon had the right not to testify and that the jury should not "let anything be inferred by the fact that the defendant did not testify." Under these circumstances the indirect references to the failure to testify cannot be considered prejudicial. Cf. United States v. Krechevsky, 291 F.Supp. 290. None of the other statements complained of, standing alone, was calculated to have any substantial prejudicial effect, and viewing the evidence and the results of the trial we cannot believe that they collectively caused any prejudice. Again we find the rationale of Harrington v. California, supra, to be applicable.

■ As his third contention Gildon argues that the trial court erred in refusing to compel the Commonwealth to reveal the name of an alleged "informant." As hereinbefore stated, the police were given a report of the fact of the robbery directly after it occurred; a cruiser was dispatched to the area and the officers saw a car leaving the area, which they pursued; the car stopped and the two occupants ran; one of the officers chased them on foot but lost them; other police were sent to the area; a message was sent over the radio to the officer in charge that "the men we were looking for were in a certain house there, 806, I believe." The officers went to that house and a man in the house said that "two men were in the back room." The police went to that room and found Jones and Gildon there. On the trial the defendants moved that the police be required to reveal the name of the man in the house who told them that "two men were in the back room." The trial court overruled the motion. Gildon maintains that the man was an "informer" whose name he was entitled to have revealed to him. We do not

agree. In an annotation on the subject of an accused's right to disclosure of the identity of an informer, in 76 A.L.R.2d at pages 262 to 345, an "informer" is defined as a person who voluntarily furnishes information of *violations of law* to officers charged with enforcement of that law. The man here in question does not fit that definition. He gave no information of a violation of law; he merely stated that there were two men in a certain room. He was not a witness whom the defendants were entitled to confront, because his information was not evidence against them.

The foregoing are all the contentions made by Gildon. Jones' first and third contentions are the same as Gildon's second and third ones, and what we have said above answers them.

■ Jones' second contention is that there was a failure to prove venue, in that there was no direct, specific testimony that Gordon's Bar was located in Jefferson County, Kentucky. There is no merit in this. There were many references in the evidence to locations, businesses and instrumentalities, including the "Louisville Police Department," which would be familiar to the jury and from which the jury would conclude that the offense was committed in Jefferson County. The fact that the places referred to were known by or probably familiar to the jury is the significant thing. See House v. Commonwealth, 251 Ky. 834, 65 S.W.2d 997; 23 C.J.S. Criminal Law § 914, pp. 605 to 619.

■ As his fourth point, Jones argues that the evidence concerning the money and sales slips found in the trousers in the room where the defendants were arrested should have been suppressed because it was obtained as a result of an illegal search. There are a number of reasons why this argument is not valid. First, there was no illegal entry into the room, because the evidence was that the room was under the possession and control of Sanders, and that he invited the police to come in. Second,

there was no search of the trousers to discover the sales slips because they were visible on mere observations. Third, there was ample probable cause for arrest of the defendants and therefore a justification for a search of the clothing they had been wearing. See Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; Commonwealth v. Johnson, Ky., 420 S.W.2d 103.

 Jones' final argument is with reference to the proof of former conviction, on the habitual criminal charge. The proof was of a former conviction of "Robert Jones, Jr.". Jones maintains that this was not sufficient to warrant his conviction on the habitual criminal charge because there was no proof that he was the *same* Robert Jones, Jr. who was previously convicted. Again we have a claim with no merit in it. Proof of identity of name is prima facie evidence of identity of person. Foster v. Commonwealth, Ky., 415 S.W.2d 373; Belcher v. Commonwealth, 216 Ky. 126, 287 S.W. 550. A prima facie case having been established, the onus was on Jones to show that he was not the person who was previously convicted.

It is our conclusion, on the appeals of Gildon and Jones, that there was no reversible error.

We come now to the question of the allowance of attorneys' fees. One attorney was appointed for Gildon, and another for Jones, on a showing of the defendants' indigency. At the close of the trial each attorney moved that he be allowed a fee, to be paid by the *county*, for his services. The motions were overruled and each attorney filed a notice of appeal from the overruling order. There is some question whether the appeals properly were perfected but we shall consider them as if they were.

In 1966 in Warner v. Commonwealth, Ky., 400 S.W.2d 209, we recognized that the burden upon the legal profession of providing legal representation without compensation, to indigents, was reaching such proportions as to approach the point of being so unfair and onerous that the Bar should no longer be expected to carry it. However, we chose then to defer to legislative action. In 1967, in Jones v. Commonwealth, Ky., 411 S.W.2d 37, we noted that the General Assembly had not had an opportunity since the publication of *Warner* to act on the problem, so we again deferred to legislative action. In 1968, in Commonwealth, Department of Corrections v. Burke, Ky., 426 S.W.2d 449, decided after adjournment of the regular 1968 session of the General Assembly, at which no action was taken on the subject, we indicated a belief that we had no choice but to continue to defer to legislative action because "Only the legislature can provide sufficient funds to finance such a project, and of course the legislature must necessarily create the system under which these funds could be properly disbursed." Now it is 1970, and the regular session of the General Assembly for this year has adjourned with still no effective action on the subject. Commendably, the 1970 General Assembly did give attention to the subject and in fact passed a bill, SB 261, which made a limited approach to a solution. However, the bill was believed by the Governor to fall short of providing a satisfactory solution, wherefore the bill was vetoed.

It appears to this court that the burden on the legal profession is continuing to increase, and as to some of those members of the profession who are being called upon to bear the brunt of the load it may actually be amounting to a taking of property without compensation. One of the attorneys in the instant case states that he has been appointed to represent indigents at least 20 times in the last few months.

 Both the federal and state constitutions prohibit the trial of an indigent defendant without counsel. This means that in a case being prosecuted in a Kentucky court the state either must see that the de-

fendant is provided counsel or it cannot proceed with the prosecution. If it should be determined that attorneys cannot constitutionally be compelled to serve as counsel without compensation, in circumstances where the burden of such service will amount to a substantial deprivation of property, it would seem that the state would be left with the choice either of not prosecuting indigents or of providing compensation for appointed counsel.

Since the providing of counsel for indigent defendants in criminal prosecutions in the state courts is an obligation imposed on the state by the constitutions it would appear that the payment of reasonable compensation to such counsel would be in the category of an *essential governmental expense.* If so, the lack of an appropriation would not be a bar to a judicial order for payment. See Miller v. Quertermous, 304 Ky. 733, 202 S.W.2d 389. In a situation of intolerable burden, the Supreme Court of Illinois ordered payment of fees and expenses to certain counsel out of the state treasury, even though there was no statutory provision for payment of such items by the state nor any appropriation for that express purpose. See People ex rel. Conn. v. Randolph, 35 Ill.2d 24, 219 N.E.2d 337, 18 A.L.R.3d 1065.

A difficulty with a judicial direction for payment would be in the lack of any standard or guide for determining reasonableness of compensation and of any system for payment. Also it would create budgetary problems. These considerations would militate against the making of a judicial order for payment.

On the other hand, there are cogent reasons why the court should not resort to the alternative of directing an abatement of prosecutions of indigents until the legislature makes provision for compensation of counsel. Insistence by defendants on the right to a speedy trial might result in the complete barring of some prosecutions because of the inability to conduct trials during the abatement period.

■ It occurs to us that there may be acceptable solutions to the problem that could be evolved through concentrated attention and effort by interested persons. It occurs to us also that the Kentucky Bar Association should be the most interested in protecting its members from the burdens and sacrifices of oppressive demands upon them to represent indigents. Hopeful that the Bar Association will take action and that acceptable solutions to the problem may be forthcoming, we shall continue for the present to defer any judicial action.[1] This means that in the instant case the counsel must go uncompensated, as they and their brethren have in the past.

The judgments and orders appealed from are affirmed.

NEIKIRK, J., did not sit.

All others concur except that STEINFELD, J., dissents from so much of the opinion as approves the refusal of the trial court to fix a fee for counsel, he being of the opinion, as expressed in his dissent in Commonwealth, Department of Corrections v. Burke, Ky., 426 S.W.2d 449, that the trial court should determine the reasonable value of the services.

---

1. On rehearing the Kentucky Bar Association and the Louisville Bar Association filed brief amicus curiae addressed to the problem but which fell short of solving it.