Edward Lenin WILLIAMS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 12, 1971.

Rehearing Denied April 2, 1971.

Edward T. Brady, David Kaplan, Stuart L. Lyon, Louisville, for appellant.

John B. Breckinridge, Atty. Gen., James H. Barr, Frankfort, for appellee.

DAVIS, Commissioner.

Edward Lenin Williams was found guilty of murdering James Alvin Wood. The penalty was fixed by the jury at death. Six assignments of error are urged in support of reversal: (1) A requested continuance was improperly denied; (2) the prosecuting attorney violated his "covenant in his contract with the jury"; (3) error occurred upon vior-dire examination of prospective jurors within the rule of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776; (4) defendant was denied due process and equal protection of the law, assured by the U.S. Constitution; (5) the accused's constitutional privilege against self-incrimination was violated by references in closing arguments of the prosecuting attorney; and (6) the death penalty is constitutionally improper as cruel and unusual punishment.

The dead body of James Alvin Wood was found in a somewhat remote area in Jefferson County on the morning of June 17, 1968. An autopsy disclosed that his death resulted from multiple stab wounds to the left chest. Lacerations upon the right rear of the victim's head were noted also.

The victim's former wife (a divorce judgment had been entered less than a year before the date of death) testified that she drove an automobile to the place where Wood was slain. She said that appellant rode on the front seat with her and that Wood and 17-year-old John Bolding were in the back seat of the car. According to Mrs. Wood, she remained in the car while the appellant, the victim, and young Bolding alighted and went out of her sight back of the car. In a short time appellant, holding the victim by the neck of his shirt, returned and "explained how Alvin [the victim] was a hard man to kill. And that they had hit him over the head and stabbed him four times." This witness then swore that the appellant stated that Alvin [victim] had said he wanted her [the witness] to "see the finish." She then related that she watched appellant administer the final thrust of a knife into her ex-husband's body, and throw away the knife, after which the three left the scene. The knife was subsequently located by officers acting under the direction of Mrs. Wood.

This grisly performance occurred at about 3:30 a. m. on June 17, 1968. After the trio left the dead victim, a police officer stopped the car in which they were riding. A headlight on the car was out—it had been broken at the crime scene when Mrs. Wood was maneuvering the car in darkness. The officer noted blood on appellant, but was informed by appellant that he had cut his finger. Although the officer made no arrest, he vividly recalled the incident when he learned of the discovery of the body in that vicinity. The information he furnished aided in leading to the detection of appellant and the others involved.

There was some evidence that appellant had been requested by Mrs. Wood to kill Wood, so that Mrs. Wood could collect $3000 life insurance. Apparently, appellant was to receive $1000 of the insurance proceeds for this task. Of course, Mrs. Wood denied this. Young Bolding declined to testify, asserting his privilege against self-incrimination.

It is unnecessary to detail the evidence further, except to note that it tends to show

that the victim and appellant had consumed a substantial amount of intoxicants and apparently had discussed at length various means by which appellant could effect the slaying of Wood, who seemed to believe that his former wife would ultimately prevent any harm to him. There is no contention, nor could there be, that the verdict was contrary to the admissible evidence.

■ Appellant maintains that reversible error occurred by reason of the trial court's denying a continuance. The circumstances respecting this claim of error are thus revealed by the record: The offense was allegedly committed on June 17, 1968, and appellant was charged with the crime by an indictment returned July 31, 1968. On August 1, 1968, appellant appeared in open court, at which time an attorney was appointed for him "for the purpose of arraignment only." Then appellant informed the court that he was represented by retained counsel, Honorable Hubert Hevey. Thereupon, appellant, by counsel and in person, waived arraignment and pleaded not guilty. The case was assigned to October 18, 1968, "for conference." Bail was set at $5000, and appellant was remanded to jail in default of bail.

The appellant appeared in court on October 18, 1968, with retained counsel, and the case was reassigned to November 1, 1968, "for conference." The order does not reflect upon whose motion reassignment was made, but no objection was noted by either side. On November 1, 1968, appellant again appeared in court with his retained counsel at which time, on motion of the Commonwealth, the case was reassigned to February 24, 1969.

On February 11, 1969, Mr. Hevey moved the court for leave to withdraw as counsel for appellant, pointing out that he also represented appellant's codefendant and stepson, John Bolding. Leave for him to withdraw as counsel was granted February 11, 1969. On that same date the court appointed Honorable Edward T. Brady, Jr., as counsel for appellant. The record does not reflect any inquiry or finding as to the matter of appellant's indigency at that point.

On February 17, 1969, Mr. Brady moved the court to afford him facilities for an absolutely private conference with appellant, pointing out the unsatisfactory arrangements for such an interview in the jail. The court granted the motion and counsel interviewed appellant, apparently on February 19, 1969.

The attorney had two private conferences with appellant before trial, although one of them was on the morning of the trial which began February 24, 1969. Appellant, of course, had known of the charge against him at least since the indictment on July 31, 1968. There is no suggestion in the record that appointed counsel lacked adequate time and opportunity to develop all defensive leads furnished to him by the appellant. Indeed, there is no indication that appellant did offer any such lead or that any such possibility even existed. In these circumstances, there is no showing of an abuse of the informed discretion of the trial judge. Compare Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377; Gibson v. Commonwealth, Ky., 417 S.W.2d 237; and Collins v. Commonwealth, Ky., 392 S.W.2d 77, in which denial of a continuance was held appropriate in circumstances comparable to those obtaining here.

United States v. Millican, (CA5) 414 F.2d 811, relied on by appellant, was a case in which court-appointed counsel, appointed only forty-eight hours before trial, new at the Bar, and trying his first Federal Court case, asked for a continuance to obtain the presence of a named prospective witness. The court reaffirmed the rule that the matter of granting a continuance rests largely in the informed discretion of the trial judge, but reversed in the particular circumstances, noting that counsel had pointed out a specific basis warranting the continuance. In the pres-

ent case there is no showing as to any aspect of the case in which further time was reasonably required to afford opportunity for adequate defense.

Secondly, the appellant avers that the Commonwealth's attorney breached "his covenant in his contract with the jury." The claimed basis for this assignment of error is found in this statement to the jury by the prosecuting attorney in closing argument:

> "And let me, please, let me make this as perfectly clear as I can: I told you in the opening statement, ladies and Gentlemen of the jury, that the only reason that Margaret Catherine Wood and John Bolding are not being tried together with this man, Williams, is because the Supreme Court of the United States has told Kentucky, you can't try 'em together. There is the only reason and I assure you—I assure you that the indictment against Margaret Catherine Williams—uh—uh—Wood and Bolding will be tried just the same as this case has been tried. I assure you that. And they would be sitting there today being tried along with this man if the law permitted it."

No objection to that comment was made, but if it were regarded as prejudicial that omission would not preclude reversal in a capital case. Carson v. Commonwealth, Ky., 382 S.W.2d 85, 95. Appellant would equate this statement by the prosecuting attorney with obtaining a criminal conviction by the prosecution's knowing use of false evidence, citing cases such as Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690, and earlier decisions cited there. In Miller v. Pate, the prosecuting attorney, with full knowledge that a garment was stained with paint, deliberately represented and argued to the jury that the stain was blood. The Supreme Court reversed the judgment of conviction because:

> " * * * the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence." Id., 87 S.Ct. at page 788, 17 L.Ed.2d at page 694.

Appellant contends that the Commonwealth could have tried all three defendants jointly, but that it feared adverse effect as to this appellant, an adult male, if he were tried jointly with codefendants, a female and a minor male. This is not a tenable argument.

In light of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, a sharp legal question could have arisen if an effort to try the three together had been made. The other two defendants were convicted and meted prison terms of twenty-one years each. No error occurred by reason of the challenged argument.

Appellant contends that the rule announced in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, was violated in voir-dire examination of veniremen respecting the death sentence. Careful review of the voir-dire examination fails to indicate any departure from the rule set out in Witherspoon. No prospective juror was challenged for cause by the Commonwealth on the basis of conscientious scruple against imposition of a death sentence. The claim of error is without substance or merit.

As corollary propositions, appellant challenges (1) the constitutional propriety of permitting the same jury to simultaneously determine guilt or innocence, and assess punishment; (2) permitting a jury to impose a death sentence without specific guidelines for so doing; and (3) the state of the law, from an equal protection viewpoint, in which the death penalty is permissible in some states and impermissible in others.

As pointed out by the Attorney General, the first contention has been decided recently in State v. Crampton, 18 Ohio St.2d 182, 248 N.E.2d 614, in which the Ohio court specifically held

that a procedure was valid even though the jury determined guilt or innocence and made recommendation as to the imposition of the death sentence or life imprisonment. The practice has prevailed in Kentucky for generations. The court is unpersuaded that any constitutional infirmity lurks in the procedure.

■ Neither is there merit in the contention that the jury must be given standards or directions as guidelines in assessing the death sentence. State v. Crampton, 18 Ohio St.2d 182, 248 N.E.2d 614, and In re Anderson, 69 Cal.2d 613, 73 Cal.Rptr. 21, 447 P.2d 117, so hold. In the Anderson opinion may be found voluminous references to decisions from many jurisdictions reaching the same result. The interested reader is referred to that opinion for further research.

■ It is not clear how it could be concluded that the constitutional equal protection of law is offended, because Kentucky law permits capital punishment in certain cases while the laws of some other states do not. We are cited to no authority in support of such an argument.

■ In a general statement, the appellant contends that he was denied due process and equal protection of the law because he, as a "poor, adult, Caucasian male," did not fare the same as did his codefendants, one of whom was a female and the other a minor. He notes that his poverty prevented his furnishing bail and employing his own counsel, whereas his codefendants were able to muster sufficient funds for both purposes. What lack of due process or what unequal protection is to be gleaned from these conditions is not clear.

■ He notes that in recent times several well-funded organizations have assumed the burden of furnishing counsel and full defense for some minority groups. Hence, he reasons, since he is a Caucasian, he was not so favored; and thus, constitutionally infirm discrimination has resulted. It seems clear that the state has had no hand in deciding which defendants shall be recipients of support by such organizations. No constitutionally afforded right or protection has been abridged in these premises.

Appellant did not testify in his own behalf. In his closing argument to the jury, the attorney for the Commonwealth made certain statements to the jury which appellant contends were impingements of his constitutionally protected right against self-incrimination. The specific statements complained of are:

"No defense in God's World to this brutal murder that's been presented to you."

\*    \*    \*    \*    \*    \*

"And think of this, in the name of justice, everything that has been presented to this jury stands uncontradicted, stands undenied, by any witness from that witness stand. Think of it.

"This defendant and his co-defendant showed no mercy to 31-year old James Alvin Wood, and nothing, nothing, has been presented to you why you should show mercy to this man."

■ With respect to the first quoted reference, it remains to place it in context. Just prior to that statement, the attorney had pointed out that no question of self-defense, killing in heat and passion, or insanity was presented. He characterized these as "the usual defenses." Read in this background, it is clear that the attorney's comment about no defense having been presented was not comment on the defendant's failure to testify.

■ As to the other passage in the argument, there is no direct comment on the failure of the accused to take the stand. Neither does the statement alone constitute such an indirect reference to that failure as to bring it within the rule forbidding such comment. Cf. Jones v.

Commonwealth, Ky., 457 S.W.2d 627, and Anderson v. Commonwealth, Ky., 353 S.W.2d 381. The isolated inferential reference to the defendant's failure to take the stand does not rise to the magnitude held constitutionally offensive in Griffin v. California, 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229.

■ The appellant's court-appointed counsel, with commendable zeal, urges that the death penalty is such cruel and unusual punishment as to fall within constitutional proscription on that account. At this writing, no court has so held so far as this court is advised. The framers of Kentucky's present constitution did not outlaw the penalty although it had been a part of this state's jurisprudence for many years. The legislature has authorized the extreme penalty for certain heinous crimes. In face of the array of decisions by the Supreme Court, as well as by appellate courts throughout this country, all upholding sentences imposing the death penalty, this court is not persuaded to accept the argument advanced for appellant in this respect.

An examination of the entire record has disclosed no basis for reversal of the judgment.

The judgment is affirmed.

All concur.