**Edward C. THOMPSON, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 3, 1972.

10 years' imprisonment. He claimed that he was not advised concerning his right to appeal as an indigent and that the attorney who represented him at his trial refused to prosecute an appeal. The United States District Court for the Eastern District of Kentucky ordered the state to afford Thompson a belated appeal and furnish him counsel and a record of the proceedings of his trial or to discharge him from custody. The trial court complied with this directive by affording Thompson a belated appeal with counsel and record furnished. We have carefully reviewed the trial record and considered the thorough and well-prepared brief which appointed counsel has filed on appellant's behalf. We find nothing even approaching a prejudicial error in his trial; we, therefore, affirm the judgment.

According to the Commonwealth's evidence, the Union Deposit Bank, located in Boone County, Kentucky, was robbed at gun point in September 1967. Two men entered the bank during its business hours. One of the men had a 32-caliber revolver. The robbers took approximately $3,000 and struck a bank customer in the process knocking him unconscious. The two thieves ran out of the bank and got into a grey Buick automobile, Kenton County license No. C–7124. This automobile was driven by Thompson, according to the evidence of an eyewitness. This witness, Emerson, positively identified Thompson as the driver of the get-away car. The loot and the revolver were found in a plastic bag on a farm owned by Thompson's family. The Buick automobile was found in the vicinity of this farm.

Hugh O. Skees, Vincent & Skees, Florence, for appellant.

John B. Breckinridge, Atty. Gen., Douglas E. Johnson, Sp. Asst. Atty. Gen., Frankfort, for appellee.

REED, Judge.

Appellant, Edward Thompson, was convicted of armed robbery and sentenced to

Thompson was fully advised of his constitutional rights at the time of arrest and refused to make any statement to the police. The two other participants in the robbery, Lattimore and Buchannon, both pleaded guilty to armed robbery and each received the minimum sentence of 10 years' imprisonment. Thompson's first trial, held in April 1968, resulted in a hung jury. At his second trial in June 1968, he

was found guilty by the jury which fixed his punishment at the minimum sentence of 10 years' confinement.

We have carefully reviewed the entire record, including Thompson's pro se motion for a belated appeal in forma pauperis. Our review convinces us that the only incidents worth discussing are the two alleged prejudicial errors asserted in the brief filed on appellant's behalf by the attorney appointed by the trial court to represent Thompson on this appeal.

▮ During appellant's second trial, he undertook to utter some extemporaneous remarks, doubtless directed to the jury, while a witness for the Commonwealth was testifying in the course of the prosecution's case in chief. The prosecutor said: "If your Honor please, the defendant will have an opportunity to testify and I am objecting to these remarks he is making while this witness is being interrogated." This, of course, was not on its face a comment on appellant's failure to testify in his own behalf. We have not regarded indirect references to the refusal of a defendant to testify as prejudicial error in some instances where such references are not emphasized or calculated or repeated. Jones v. Commonwealth, Ky., 457 S.W.2d 627 (1970) and Williams v. Commonwealth, Ky., 464 S.W.2d 244 (1971). At the time the statement was made, the prosecutor, presumably, did not know whether Thompson would testify or not. Nevertheless, under other circumstances, it is conceivable that such a remark could prejudice a defendant. Here, however, it was an understandable reply to Thompson's audible statements made in the presence of the jury. The prosecutor's statements were neither calculated, nor emphasized nor repeated. In the context presented we find no prejudicial incident. After all, the traditional and fundamental constitutional right against self-incrimination has never been interpreted to allow a defendant to utter testimonial comments for the jury's consideration, but at the same time be immune from cross-examination.

▮ The other incident relates to the admission of evidence. The sheriff was permitted to testify that at Thompson's first trial he voluntarily stated to the witness, during a conversation at the counsel table while they were waiting for the jury to return, that Emerson, the eyewitness, was "close enough to identify him." A deputy sheriff testified that at appellant's first trial, while he was returning the accused to jail during a lunch recess, Thompson remarked that Emerson was "the only one that could prove him guilty and send him to the electric chair." Thompson's only evidence consisted of the testimony of his brother that no such statement was made to the sheriff.

It is suggested that the testimony of the officers was inadmissible because it violated "the spirit" of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is undisputed that Thompson was adequately advised under Miranda at the time of his arrest. He understood the warnings sufficiently to refuse to make any statement. There is no claim that custodial interrogation, planned or otherwise, was even attempted in the circumstances surrounding the statements. There is only a denial that one of the statements was uttered.

According to the impassioned dissenting opinions in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), "the spirit" of Miranda was significantly battered and not merely bruised by the majority decision in that case. Harris held that a confession made without Miranda warnings if otherwise voluntary could be used on cross-examination of a defendant who elected to testify in his own behalf. It is our view that even under the construction of the scope of Miranda espoused by the dissenting justices in Harris, there was surely no violation of the requirements of Miranda involved in the admission of the

evidence to which appellant's complaint is directed. It cannot be seriously argued that the Commonwealth's evidence did not establish a submissible case. This ends the matter so far as we are concerned.

The judgment is affirmed.

All concur.