The State of Ohio, Appellee, *v.* Anderson. Appellant.

(No. 9864—Decided July 27, 1971.)

*Mr. George C. Smith,* prosecuting attorney, and *Mr. David H. Bodiker,* for appellee.

*Mr. Otto Beatty, Jr.,* and *Mr. Thomas M. Tyack,* for appellant.

HOLMES, J. This matter involves the appeal of a first degree murder conviction in which there was no recommendation of mercy by the jury.

The facts, briefly stated, are that the defendant was arrested and charged, along with one Amos Henderson, with armed robbery and murder in the first degree arising out of an incident that took place at a Lawson food store in Columbus, Ohio, on October 13, 1969.

At the time of the arrest, the defendant was 16 years old. A hearing was first had on the matter in the Juvenile Court of Franklin County, where the defendant was represented by counsel.

The Juvenile Court found that there was probable cause for belief that the defendant committed the acts as charged in the affidavit, and remanded the defendant to the Ohio Youth Commission for mental and physical examination.

Subsequently, the defendant was bound over to the Franklin County Grand Jury and he was indicted on two counts of armed robbery and one count of murder in the first degree. At time of trial, the defendant changed a plea of not guilty to that of guilty to the two counts of armed robbery, and the trial proceeded on the third count of murder-first.

The evidence adduced at the trial showed that the defendant and one Amos Henderson had planned the robbery of Lawson's in conjunction with a Lawson female employee. The defendant had procured a pistol, had placed two bullets in the cylinder, and had cocked the pistol prior to entering the store. The evidence further shows that the gun had remained in a cocked position while the defendant was pointing it at one of the employees who had been ordered to open the safe, and at all other times while the defendant was in the store.

After receiving a call to the premises, the police arrived while the defendant and his accomplice were still within the store. Upon being alerted as to the arrival of the police, both the defendant and the accomplice ran to the back of the store, overturning some bottles in their haste.

The accomplice Henderson was caught before he could

leave the store, but the defendant jumped or kicked his way through a screen door, tearing out a portion of the screening in the process.

The deceased, an off-duty auxiliary policeman, who apparently had proceeded to the scene after hearing the police call on his privately-owned radio containing a police band, was found immediately after the defendant's escape, lying near the side door of Lawson's through which the defendant had jumped.

The deceased was bleeding profusely from a bullet wound in his head. The bullet was later found to be .38 caliber, and had been fired from the gun that was brandished by the defendant.

The defendant was later apprehended through tracing a cab driver who had picked up the former at the home of one of the defendant's friends and who then proceeded to drive the defendant to his place of residence.

A gun of the same description as the gun carried by the defendant during the robbery was found in a drain line by a neighbor in the vicinity of the Lawson store. Such gun had one expended bullet in the cylinder.

The defendant took the stand and asserted that the gun had discharged in the act of his diving through the screen door; that he had not seen anybody at the side door when he was making his escape; and that he had not intended to kill anyone, nor did he realize at the time that he had killed anyone.

The defendant sets forth eight assignments of error, which we shall take up in the sequence as presented.

The first assignment of error is as follows:

"The death sentence imposed by the jury in the within cause violated due process of law because of the exclusion of jurors with scruples against capital punishment."

The appellant bottoms his argument for this assignment of error upon *Witherspoon* v. *Illinois* (1968), 391 U. S. 510, in which the Supreme Court construed an Illinois statute which permitted a challenge for cause of anyone merely because he "has conscientious scruples against capital punishment, or that he is opposed to the same."

The Supreme Court of the United States reversed the imposition of the death penalty upon the defendant which had been imposed by a jury, holding, in effect, that a jury which results in certain members thereof being excluded merely on the basis that they have conscientious scruples against capital punishment was violative of the Sixth and Fourteenth Amendments to the United States Constitution.

However, in the Ohio case of *State* v. *Pruett* (1969), 18 Ohio St. 2d 167, the Ohio Supreme Court, speaking through Chief Justice Taft, drew a distinction between the Illinois and Ohio statutes as follows:

"Unlike the Illinois statute, our statute does not authorize a challenge for cause of anyone merely because he says he 'has conscientious scruples against capital punishment, or that he is opposed to the same.' Our statute has, since at least 1869 (66 Ohio Laws 287, 307), apparently agreed with the conclusion stated in the opinion in *Witherspoon,* and thus has authorized challenging a juror for cause only where such a juror had opinions which precluded him from voting for a verdict that would result in the death penalty."

" * * *

"In our opinion, *Witherspoon* and *Boulden* v. *Holman* (1969), 394 U. S. 478, 22 L. Ed. 2d 433, recognize that a state statute may authorize challenge of a prospective juror for cause in a capital case where his opinions preclude him from finding the accused guilty of an offense punishable with death."

In this case, upon a review of the inquiry by the court of the jury on *voir dire,* we find the following language, at page 15 of the record:

"Let me now, then, turn to this matter of your eligibility to serve as a jury in this case, which is the trial of a person charged with a capital offense. No one is eligible to serve on the jury who would not be able to render in a proper case a verdict which the facts and the law would require.

"I repeat, to be eligible to serve as a juror in this case

one must be able to render and sign any proper verdict under the law which the facts of this case warrant. That is, one's opinions must not prevent him from rendering any proper verdict which under the alleged charge, if proved, would be a verdict of guilty of murder in the first degree, which would mean punishment by death unless the jury by unanimous vote recommend mercy, which would reduce the punishment to imprisonment for life.

"This is a kind of a test which you and only you can decide. In other words, your eligibility to serve under this test is a matter of your searching your own mind and conscience and judgment. If there is any reason of religion, predetermined conviction, or fixed opinion which would preclude you from rendering any appropriate verdict in this case, including finding that the defendant was guilty of the capital charge of murder in the first degree, which would mean punishment with death if the facts warranted such a finding."

It is our opinion that the court did not err in its explanation of the law of the eligibility of jurors to serve if they possess certain ideals or philosophies.

Further, we hold that the court did not err in permitting the challenges for cause upon the basis that such juror felt that his conscience, conviction or opinion would preclude him from rendering any appropriate verdict, including a verdict of guilty of murder in the first degree without recommendation of mercy, if the facts would so warrant.

Such procedure we hold not to be violative of the pronouncements as contained in *Witherspoon.*

The second assignment of error is that:

"The death sentence imposed in the instant case deprives the defendant of due process of law because the jury was not instructed as to standards to follow in determining whether or not to recommend mercy."

The third assignment of error is as follows:

"The Ohio procedure wherein the jury determines both guilt versus innocence and life versus death at the same time violates the defendant's rights under the Fifth Amendment and due process clause."

Both of these assignments of error have been mooted by the pronouncement of the United States Supreme Court just two months ago in the case of *McGuatha* v. *California* (1971), 91 S. Ct. 1454.

A pertinent portion of the holding of the United States Supreme Court in that case, at page 1474, is as follows:

" * * * From a constitutional standpoint we cannot conclude that it is impermissible for a state to consider that the compassionate purposes of jury sentencing in capital cases are better served by having the issues of guilt and punishment determined in a single trial than by focusing the jury's attention solely on punishment after the issue of guilt has been determined."

These assignments of error are therefore not well taken.

The fourth assignment of error is that·

"The death penalty constitutes a violation of the defendant's right under the Eighth Amendment to the Constitution."

This assignment of error may be rather quickly disposed of in this appeal in that the Supreme Court of Ohio has recently spoken on this issue.

In *State* v. *Crampton* (1969), 18 Ohio St. 2d 182, we find the following in paragraph four of the syllabus:

"The punishment of death for the crime of murder in the first degree, where the jury does not recommend mercy, does not violate the constitutional prohibition against cruel and unusual punishments."

This is the current law of Ohio, to which we subscribe, and must apply to the matter before us. This assignment of error must therefore be rejected.

The fifth assignment of error is as follows:

"The waiver by the juvenile branch of the Court of Common Pleas permitting the defendant to be tried as an adult violated defendant's rights under the Constitution."

Such assignment of error is not well taken. It is true, as argued by the appellant, that in juvenile cases where there is a finding or determination of the guilt of a juvenile, such finding or determination must be based upon

proof beyond a reasonable doubt. Such was the holding of *In Re Winship* (1970), 397 U. S. 358, 25 L. Ed. 2d 368.

However, in the matter before us, the Juvenile Court did not make a finding or determination as to the guilt of the defendant juvenile; the court was, pursuant to R. C. 2151.26, making a determination of the presence of probable cause to believe the child had committed the act alleged in order to bind such child over to the grand jury for further proceedings.

The defendant's constitutional rights were not violated during this procedure, and this assignment of error is not valid.

The sixth assignment of error is as follows:

"The court erred in the admission of certain evidence during the course of the trial."

This assignment of error complains of the allowance of the introduction of a photograph of a portion of the screen door through which the defendant had leaped or stepped, and the introduction of other photographs of the premises. The photograph of the screen door was introduced by the state in order to show a footprint, allegedly the defendant's, in order to prove further that the defendant had kicked the screen out rather than jumping, and that such exit did not discharge the gun accidentally as claimed by the defendant.

There was no prejudicial error in the admission of any of the photographs.

There is further complaint of the admission of the testimony of Officer Cottrill who testified as a ballistics expert.

There was a rather extensive examination and cross-examination of Officer Cottrill on *voir dire* as to his qualifications. The judge, after having an opportunity to see and hear Officer Cottrill, permitted the officer to testify. The trial court's ruling that such testimony would be competent to submit to the jury was not in error. It could well be within the province of the jury to attribute that degree of weight to the testimony of Officer Cottrill as they felt that it would warrant based upon the showing of his qualifications and his demeanor as a witness.

The seventh assignment of error is that:

"The verdict is not supported by that quantum of evidence required by law and is, therefore, contrary to law."

There were two different theories presented as to how the shooting of the deceased might have taken place. The state claimed that the defendant knowingly discharged the pistol in the process of his escape and shot and killed the deceased.

The defendant, on the other hand, claims that he jumped through the screen door and in doing so, that the gun went off and the bullet apparently hit the deceased, whom the defendant claimed he had not seen.

The circumstantial evidence as presented surrounding the incident of the shooting of the deceased could reasonably support the jury's conclusion that the gun was discharged by the defendant, after he passed through the door, rather than its being accidentally discharged in the process of his jumping through the screen.

We hold that the verdict of the jury was based upon, and was supported by, a legally proper quantum of evidence.

The eighth assignment of error, which is the general one, "other errors apparent on the face of the record," is hereby denied.

Accordingly, the judgment of the Common Pleas Court of Franklin County is hereby affirmed.

*Judgment affirmed.*

WHITESIDE and REILLY, JJ., concur.