Ronnie COLWELL, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee,

and

Dale Dashielle, Appellant,

v.

Commonwealth of Kentucky, Appellee.

No. 1998–SC–1071–MR, 1999–SC–0095–TG.

Supreme Court of Kentucky.

Dec. 21, 2000.

Rehearing Denied March 22, 2001.

Bruce W. Lominac, London, Counsel for Appellant Ronnie Colwell (1998–SC–1071–MR).

A. B. Chandler, III, Attorney General, J. Hamilton Thompson, Assistant Attorney General, Frankfort, Counsel for Appellee Commonwealth of Kentucky (1998–SC–1071–MR and 1999–SC–0095–TG).

Suzanne Hopf, Department of Public Advocacy, Frankfort, Counsel for Appellant Dale Dashielle (1999–SC–0095–TG).

COOPER, Justice.

Following a trial by jury, appellants Colwell and Dashielle were each convicted of burglary in the second degree and theft by unlawful taking of property valued at more than $300. Additionally, Colwell was convicted of being a persistent felony offender (PFO) in the second degree. Colwell received an enhanced sentence of fifteen years on the burglary conviction and a

sentence of five years on the theft conviction. The sentences were ordered to run consecutively for a total of twenty years. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). Dashielle was sentenced to five years for burglary and one year for theft to run consecutively for a total of six years. He appealed to the Court of Appeals. We granted transfer so that both appeals arising out of this joint trial could be consolidated for appellate review. CR 74.02(2).

## I. FACTS.

On the night of June 30, 1998, Laurel County Deputy Sheriff James Reed received a 911 call from a concerned neighbor advising that a burglary was in progress at the residence of Jake Anderson. Reed and another officer arrived at the Anderson residence ten minutes later. Reed heard someone running through the weeds behind the house and, upon investigation, found Colwell and Dashielle huddled together under a tree approximately thirty yards down a hill behind the Anderson home. A pat-down search of Colwell revealed several items believed to have been stolen from Anderson's residence.

A search of the residence revealed it to have been ransacked. A gray Dodge pickup truck found parked in Anderson's driveway was filled with items later identified as having been removed from the residence. The value of the goods removed from the home was in excess of $6,200.00. Upon being advised that he would be taken into custody, Colwell asked Deputy Reed to retrieve his driver's license and cigarettes from the pickup truck. The driver's license was found in the glove compartment; the cigarettes were on the passenger side of the dashboard.

At trial, each defendant claimed to have been an innocent bystander to a burglary committed by the other. Colwell claimed the truck belonged to Dashielle who had offered to give him a ride home. Dashielle stopped at Anderson's residence, claiming that Anderson owed him some money and had promised to leave it under the doormat. Instead, Dashielle entered the residence. Because he was on parole for another burglary, Colwell got out of the pickup truck and ran into the woods and over a hill behind the victim's house. Shortly thereafter, Dashielle, pursued by the police, came running over the hill and collided at full speed with Colwell. Colwell denied entering the Anderson residence.

Dashielle claimed that he had been a passenger in the truck which belonged to Colwell.[1] He testified that they were on their way to Colwell's residence when Colwell pulled into Anderson's driveway and proposed that they burglarize Anderson's residence. Dashielle declined and was attempting to leave the scene when he fell down drunk in the woods. Shortly thereafter, Colwell, chased by the police, came running toward him and both were arrested. Dashielle, too, denied entering the Anderson residence.

## II. DENIAL OF CONTINUANCE.

Colwell's only claim of error on appeal is the trial court's denial of his motion for a continuance. When the case was called for trial, Colwell's counsel made the following motion:

> Judge, I have a motion to continue through this jury pool. This is a new jury pool. However, it turns out that Jake Anderson, the complaining witness, is Juror No. 1 of that pool.

The judge responded:

> That's correct. He was not brought into the courtroom, so he has had no

---

1. The pickup truck, which bore Indiana license plates, was later determined to have been stolen from Florida. Colwell was a resident of Laurel County, Kentucky. Dashielle, who had lived only briefly in Laurel County, had formerly resided in both Indiana and Florida.

contact with the other jurors. Mr. Beckner [the prosecutor] made me aware of this on Friday and I advised Mr. Beckner to have him just come to his office, and I told him that I would excuse him from the jury pool, which I did.

In other words, although Anderson was scheduled to serve on the jury pool assigned to this case, the trial judge had previously excused him from jury duty so that he was not in the courtroom mingling with the other jurors prior to trial. Furthermore, since this was the first case for that jury pool, Anderson had not had any prior contact with the other jurors. Colwell's reliance on *Hellard v. Commonwealth*, Ky.App., 829 S.W.2d 427 (1992), *overruled on other grounds, Commonwealth v. Burge*, Ky., 947 S.W.2d 805 (1996), is misplaced. In that case, the witness actually had served as a juror on other cases with other members of the same jury pool.

> This case clearly involves a "close relationship" of the situational type. As a member of the jury pool, the video store owner had numerous opportunities to meet the other members of the pool. Indeed, the record reveals that the owner had previously sat with at least four of the potential jurors in Hellard's case and had agreed with them on a verdict in that case. We feel that the possibility of a jury according the testimony of a witness greater weight than it otherwise would have received is just too great when the witness is a member of the same jury pool.

*Id.* at 429–30.

■ Here, the judge had made prior arrangements to insure that there would be no interaction between Anderson and other members of the jury pool. Under the facts of this case, there was no possibility that Anderson's assignment to the jury pool could have tainted the other jurors or otherwise prejudiced Colwell's entitlement to a fair trial.

## III. DENIAL OF SEPARATE TRIALS.

■ Dashielle's first claim of error is that the trial court should have granted his pretrial motion for a severance. At trial, he premised his motion on grounds that he and Colwell had antagonistic defenses in that each intended to cast the blame on the other. Of course, that fact is more supportive of joinder than severance.

> [N]either antagonistic defenses nor the fact that the evidence for or against one defendant incriminates the other amounts, by itself, to unfair prejudice.... That different defendants alleged to have been involved in the same transaction have conflicting versions of what took place, or the extent to which they participated in it, vel non, is a reason for rather than against a joint trial. If one is lying, it is easier for the truth to be determined if all are required to be tried together.

*Burdell v. Commonwealth*, Ky., 990 S.W.2d 628, 633 (1999) (quoting *Ware v. Commonwealth*, Ky., 537 S.W.2d 174, 177 (1976)).

On appeal, Dashielle claims it was presumptively prejudicial to try him jointly with Colwell, who was also charged as a persistent felony offender. He relies on *Hardin v. Commonwealth*, Ky., 437 S.W.2d 931, 933 (1968) and *Jones v. Commonwealth*, Ky., 457 S.W.2d 627, 629 (1970), *cert. denied*, 401 U.S. 946, 91 S.Ct. 964, 28 L.Ed.2d 229 (1971), both of which were tried under the old habitual criminal statute. KRS 431.190 (repealed 1974 Ky. Acts, ch. 406, § 336). During that regime, there was no separate sentencing phase of a criminal trial and trial courts would read the habitual criminal indictment to the jury along with the indictments for the underlying offenses; and proof of the prior convictions was offered along with the evidence proving the underlying offenses.

■ Under the present persistent felony offender statute, KRS 532.080(1), proof of the prior offense is reserved until a

separate penalty phase of the trial that does not take place until after the defendant's guilt of the underlying offense has already been determined. Here, the trial judge not only bifurcated the guilt phase from the penalty phase, but also bifurcated Colwell's penalty phase from that of Dashielle. Thus, the jury was not informed of Colwell's PFO indictment until after the conclusion of Dashielle's penalty phase. In other words, all proceedings relating to Dashielle were completed before the jury was informed of Colwell's PFO indictment. Under present procedures, there is no reason to apply the "presumptive prejudice" rule of *Hardin* and *Jones* just because one codefendant is indicted as a PFO and the other is not. Thus, there was no error in the trial judge's denial of Dashielle's motion to sever his trial from that of Colwell.

## IV. EVIDENCE OF OTHER BAD ACTS.

Dashielle asserts reversible error in the trial court's denial of his motion to suppress evidence that the gray pickup truck found in Anderson's driveway had been reported stolen. He claims the evidence was irrelevant other than to infer that he was a thief. We disagree. KRE 404(b) provides as follows:

> Other crimes, wrongs, or acts. *Evidence of other crimes, wrongs, or acts* is not admissible to prove the character of a person in order to show action in conformity therewith. It *may*, however, *be admissible:* (1) *If offered for some other purpose*, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident .... (Emphasis added.)

While the rule describes some examples of "other purposes," "it states the 'other purpose' provision in a way that leaves no doubt that the specifically listed purposes are illustrative rather than exhaustive." *Tamme v. Commonwealth*, Ky., 973 S.W.2d 13, 29 (1998), *cert. denied*, 525 U.S. 1153, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999) (quoting R. Lawson, *The Ken-*

*tucky Evidence Law Handbook* § 2.25 at 87 (3d ed. Michie 1993)). Here, the "other purpose" for proving that the vehicle had been stolen in Florida was to connect the vehicle to Dashielle, who had formerly resided in Florida. The evidence was relevant to prove which defendant was responsible for the truck containing the stolen property, as well as to rebut Dashielle's assertion that the truck was not his. *Brown v. Commonwealth*, Ky., 983 S.W.2d 513, 516 (1999).

## V. FAILURE TO INSTRUCT ON LESSER INCLUDED OFFENSE.

Dashielle asserts error in the trial judge's refusal to instruct the jury on the offense of criminal trespass in the third degree as a lesser included offense of burglary in the first degree. His theory is that a jury could believe that he did not enter Anderson's residence, but trespassed on Anderson's property while attempting to flee the scene of the burglary.

KRS Chapter 511 describes three degrees of burglary and three degrees of criminal trespass, all of which proscribe intrusions by the defendant on the property of the victim. All contain one multifaceted common element, *viz:* that the defendant "knowingly enter[ed] or remain[ed] unlawfully" in or upon the victim's property. The three degrees of burglary contain an additional common element that the defendant did so "with the intent to commit a crime," the element which distinguishes the felony of burglary from the misdemeanor of criminal trespass.

An additional (third) element which distinguishes third-degree burglary, a Class D felony, from second-degree burglary, a Class C felony, is the nature of the property in or upon which the offense occurred. If the property is a "building," the offense is third-degree burglary, KRS 511.040(1); if it is a "dwelling," the offense is second-degree burglary, KRS 511.030(1). The definitions of "building" and "dwelling" are

similar, but not identical. A "building" is defined, *inter alia,* as "any structure ... [w]here any person lives," KRS 511.010(1)(a); whereas, a "dwelling" is defined as "a building which is usually occupied by a person lodging therein." KRS 511.010(2). Thus, every dwelling is a building, but every building is not a dwelling. Since the burglary of a building is a Class D felony, KRS 511.040(2), and the burglary of a dwelling is a Class C felony, KRS 511.030(2), the legislature obviously considered the distinction to be significant and the burglary of a dwelling to be more grievous than the burglary of a mere building.

First-degree burglary is committed when the burglary of a building is accompanied by an additional (fourth) aggravating element, *viz:* that in effecting entry or while in the building or in the immediate flight therefrom, the defendant or another participant in the crime (a) was armed with explosives or a deadly weapon, or (b) caused physical injury to any person who was not a participant in the crime, or (c) used or threatened the use of a dangerous instrument against any person who was not a participant in the crime. KRS 511.020(1). Thus, first-degree burglary is an aggravated burglary of any building, including, but not limited to, a dwelling. Absent proof of the aggravating element, the offense is reduced from first-degree burglary to *either* second-degree burglary, if the building is a dwelling, *or* third-degree burglary, if the building is not a dwelling.

Criminal trespass occurs when a defendant "enters or remains unlawfully" on the victim's property, but without the intent to commit a crime. Like the two lesser degrees of burglary, the degree of criminal trespass depends on the nature of the property in or upon which the trespass occurred. If the property was a dwelling, the offense is first-degree criminal trespass. KRS 511.060(1). If the property was EITHER a building OR "*premises* as to which notice against trespass is given

by fencing or other enclosure," the offense is second-degree criminal trespass. KRS 511.070(1) (emphasis added). If the property was only a premises, the offense is third-degree criminal trespass. KRS 511.080. While a "premises" can be either a "building" or "any real property," KRS 511.010(3), that term is obviously used in the context of second- and third-degree criminal trespass to refer only to land, not a building. Otherwise, KRS 511.070 would be redundant, *i.e.,* "either a building or a building," and KRS 511.080 would criminalize the same conduct, *i.e.,* trespass of a building, which is already criminalized in KRS 511.070. The dual definition of "premises" in KRS 511.010(3) applies only when that term is used in the context of KRS 511.090, which describes privileges and licenses to enter or remain upon the premises of another.

This conclusion is supported by the official commentary to the trespass statutes, which provides that since trespass of a building is included within the coverage of the higher degrees of criminal trespass, the "exclusive coverage [of third-degree criminal trespass] is only for unlawful intrusions onto land." KRS 511.060 (1974 Commentary).

Dashielle was not charged with unlawfully entering upon Anderson's unimproved land; and had he been, such would not have been a lesser included offense of the burglary of Anderson's dwelling. As applied to these facts, a lesser included offense is one which "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." KRS 505.020(2)(a). Stated otherwise, if the lesser offense requires proof of a fact not required to prove the greater offense, then the lesser offense is not included in the greater offense, but is simply a separate, uncharged offense. *Commonwealth v. Day,* Ky., 983 S.W.2d 505, 509 (1999). To prove guilt of criminal trespass in the third degree, the Commonwealth is required to prove that the defendant entered upon the victim's unimproved

land. Proof of that fact is not necessary to convict of any degree of burglary; thus criminal trespass in the third degree is not a lesser included offense of burglary.

■ Finally, all three degrees of criminal trespass are premised upon a jury's finding that the defendant did *not* enter or remain in or upon the victim's property "with the intent to commit a crime." Here, the jury also found Dashielle guilty of felony theft under an instruction which required the jury to believe beyond a reasonable doubt that he took a computer, television, stereos and jewelry belonging to Anderson with the intent to deprive Anderson of that property. Thus, the jury could not possibly have believed that Dashielle entered or remained on the victim's property *without* "the intent to commit a crime." Under these facts, even if criminal trespass in the third degree were a lesser included offense of burglary, the failure to instruct on that offense would have been harmless beyond a reasonable doubt.

Accordingly, the judgments of conviction and sentences imposed by the Laurel Circuit Court are affirmed.

LAMBERT, C.J.; GRAVES and WINTERSHEIMER, JJ., concur.

KELLER, J., concurs in part and dissents in part by separate opinion in which JOHNSTONE and STUMBO, JJ., join.

KELLER, Justice, concurring in part and dissenting in part.

I write separately because I believe the trial court committed reversible error when it refused Dashielle's request to instruct the jury as to criminal trespass in the third degree as a lesser included offense to the indicted charge of burglary in

the first degree. I would reverse Dashielle's conviction for burglary in the second degree and remand that portion of Laurel Circuit Court Indictment 98–CR–0140–002 to the trial court for a new trial. Section IV of the majority opinion, which addresses this issue, rests upon the untenable premise that the use of the word "premises" in KRS 511.080, which defines the crime of criminal trespass in the third degree, does not refer to the definition of "premises" contained in this Chapter at KRS 511.010(3),[1] but rather refers "only to land, not a building."[2]

The majority opinion properly identifies that, in order to address this allegation of error, we must apply KRS 505.020(2) to determine whether "the lesser offense involves fewer of the same constituent elements than the charged greater offense so that the proof necessary to establish the greater offense will of necessity establish every element of the lesser offense."[3] Such an inquiry requires focus on the statutory language because "the critical question is whether 'each *statute* requires proof of an additional fact which the other does not' and not whether the evidence actually introduced at trial could be relied on to prove the elements of both offenses."[4]

The Kentucky Penal Code defines the elements of burglary in the first degree at KRS 511.020:

A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly *enters or remains unlawfully in a building,* and when in effecting entry or while in the building or the immediate flight therefrom, he or another participant in the crime:

(a) Is armed with explosives or a deadly weapon; or

---

1. KRS 511.010(3) ("'Premises' includes the term 'building' as defined herein and any real property." *Id.*).

2. *See* Majority Opinion at 9, at 726.

3. *Cheser v. Commonwealth,* Ky.App., 904 S.W.2d 939 (1995) (*citing Hart v. Commonwealth,* Ky.App., 768 S.W.2d 552, 553 (1989)).

4. *Id.*

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.[5]

KRS 511.080 defines the elements of criminal trespass in the third degree:

A person is guilty of criminal trespass in the third degree when he knowingly *enters or remains unlawfully in or upon premises.*[6]

The majority opinion correctly identifies that this inquiry must focus on the words "premises" and "building" to determine whether proof of the "enters or remains unlawfully in a building" element of burglary in the first degree necessarily establishes that an individual "enters or remains unlawfully in or upon premises." Where I depart from the majority opinion is in the significance I attach to the KRS Chapter 511 definitions of "building" and "premises":

(1) "Building", in addition to its ordinary meaning, means any structure, vehicle, watercraft or aircraft:

(a) Where any person lives; or

(b) Where people assemble for purposes of business, government, education, religion, entertainment or public transportation.

Each unit of a building consisting of two (2) or more units separately secured or occupied is a separate building.

. . .

(3) "Premises" includes the term "building" as defined herein and any real property.[7]

As any "building" falls within the definition of "premises," we find guidance[8] in how overlapping definitions effect the lesser included offense analysis from the Official Commentary to KRS 505.020(2)(a):

The first situation is contained in subsection (a). It serves to "include" within one offense any other offense (felony, misdemeanor, or violation) which may be established by the same, or less than all, facts required for proof of the first. (It should be obvious that in this context "fact" means ultimate fact.) In other words, "if the proof necessary to establish the greater offense will of necessity establish every element of the lesser offense," the latter is an included offense. *The law of criminal trespass, as contained in KRS Ch 511 provides a good illustration of this subdivision; an unlawful entry into a dwelling house constitutes criminal trespass in the first degree (KRS 511.060); an unlawful entry into a building constitutes criminal trespass in the second degree (KRS 511.070). Since the same proof that establishes the first offense will also establish the second, the latter is an included offense. This means [that], as a consequence of subsection (2)(a), an individual charged with first degree trespass can be convicted of second degree trespass* . . . .[9]

**5.** KRS 511.020.

**6.** KRS 511.080.

**7.** KRS 511.010.

**8.** *See* KRS 500.100 ("The commentary accompanying this code may be used as an aid in construing the provisions of this code." *Id.*); *Cooper v. Commonwealth,* Ky., 550 S.W.2d 478 (1977).

**9.** 1974 Kentucky Crime Commission/LRC Commentary to KRS 505.020 (emphasis added). Thus, as a matter of law, criminal trespass in the second degree, KRS 511.070, is a lesser included offense of criminal trespass in the first degree, KRS 511.060, because the definition of "building" encompasses the definition of "dwelling." This does not mean, of course, that a trial court should always instruct a jury regarding criminal trespass in the second degree as a lesser included offense to criminal trespass in the first degree. To the contrary, a trial court should only do so when the evidence submitted at trial would raise a question about the nature of the structure allegedly unlawfully entered by the defendant. *See, e.g., Parker v. Commonwealth,* Ky., 952 S.W.2d 209, 211 (1997); *Webb v. Commonwealth,* Ky., 904 S.W.2d 226 (1995); *Bills v. Commonwealth,* Ky., 851 S.W.2d 466,

The commentary to KRS 505.020 thus conclusively establishes that "definitional overlap" between elements of crimes may qualify a crime as a lesser included offense.

The majority opinion's erroneous conclusion stems directly from its difficulties in processing the possibility that the same conduct, e.g., unlawful entry into a building, could constitute either criminal trespass in the second degree or criminal trespass in the third degree:

> While a "premises" can be either a "building" or "any real property," (KRS 511.0103), that term is obviously used in the context of second- and third-degree criminal trespass to refer only to land, not a building. Otherwise, KRS 511.070 would be redundant, i.e., "either a building or a building," and KRS 511.080 would criminalize the same conduct, i.e., trespass of a building, which is already criminalized in KRS 511.070. The dual definition of "premises" in KRS 511.010(3) applies only when that term is used in the context of KRS 511.090, which describes privileges and licenses to enter or remain upon the premises of another.[10]

I am baffled by the fact that the majority views this overlap between "premises" and "buildings" as an unpassable hurdle. The entire concept of lesser included offenses is premised on the idea that a given action or conduct can constitute multiple crimes.[11] In fact, elsewhere in the opinion, the majority passively accepts the fact that "every dwelling is a building"[12] although such definitional overlap necessarily leads to the conclusion that a person who enters a dwelling unlawfully with the intent to commit a crime inside has committed both burglary in the second degree and burglary in the third degree. Even the Official Commentary to KRS 505.020 states that, were it not for a double jeopardy bar codified at 505.020(1)(a), every person who committed burglary in the second degree could also be convicted of criminal trespass in the first degree:

> The first of the exceptions prohibits multiple convictions for offenses arising out of one course of conduct if one of them constitutes an "included offense." ... To illustrate by use of a hypothetical situation: suppose that D ... unlawfully enters a dwelling house with intent to steal. He is apprehended while in the house. With this conduct, D has committed the offense of burglary in the [second] degree. See KRS 511.020. *He has also committed the offense of criminal trespass in the first degree, which is committed with all of the elements of burglary except for the requirement of "intent to commit a felony therein."* See 511.060.
>
> Subsection (1)(a) would prohibit a conviction of D for both of these offenses.[13]

Certainly, as a factual matter, a given building either is or is not a "dwelling," and a defendant who unlawfully enters a dwelling either does or does not intend to commit a crime therein. In such cases, therefore, trial courts should only actually instruct on the lesser included offense when the evidence submitted at trial presents an issue with respect to either the nature of the structure or the purpose for which the defendant unlawfully entered the structure. Nonetheless, as a matter of

---

469 (1993); *Billings v. Commonwealth,* Ky., 843 S.W.2d 890 (1992).

**10.** Majority Opinion at 9, at 726.

**11.** *See, e.g.,* KRS 505.020(1) ("When a single course of conduct may establish the commission of more than one (1) offense, he may be prosecuted for each such offense." *Id.*).

**12.** *See,* Majority Opinion at 8, at 726. *See also Baker v. Commonwealth,* Ky.App., 677 S.W.2d 316 (1984) ("[A] building can include a dwelling under KRS 511.010(1)(a)." *Id.*).

**13.** 1974 Kentucky Crime Commission/LRC Commentary to KRS 505.020 (emphasis added).

law, the definitions of "building" and "dwelling" overlap just as surely as do the definitions of "building" and "premises," and, in both cases, the inclusive definitions create the possibility of lesser-included offenses.

Any concerns regarding this overlap should be assuaged by the Official Commentary to KRS 511.060, which indicates that the overlap was an intentional decision on the part of the drafters of the Kentucky Penal Code. The majority quotes this Commentary selectively and without regard to its context in an attempt to portray criminal trespass in the third degree as a crime which can only be committed by intrusions onto unimproved land.[14] The full text of the Commentary to KRS 511.060, however, flatly contradicts the majority's reading and demonstrates that, "premises" as used in KRS 511.080 includes the definitions of "dwelling" and "building" as used in the higher degree criminal trespass offenses, and therefore criminalizes the same conduct criminalized by the higher degree criminal trespass offenses. Criminal trespass in the third degree is broader than the higher degree criminal trespass offenses, however, because it *also* criminalizes intrusions onto land:

> The offense that is created by KRS 511.080, criminal trespass in the third degree, has the very same elements as the two higher degrees of trespass except for the area into which unlawful intrusion is proscribed. *The protected area is described as "premises," which*

is defined in KRS 511.010 to include "dwellings," "other buildings," and "any real property." Defined in this way, it should be apparent that the lowest degree of trespass is included in each of the two higher degrees. Its exclusive coverage is only for unlawful intrusions onto land.[15]

In other words, since all "dwellings" [16] are also "buildings" and all "buildings" are included within "premises," all "dwellings" are also "premises," and a defendant who unlawfully enters any of the above may be found guilty of criminal trespass in the third degree. A defendant who unlawfully intrudes upon unimproved land belonging to another which is neither fenced nor otherwise enclosed without entering a dwelling or other building, however, can only be guilty of criminal trespass in the third degree.

Without a single citation and notwithstanding the fact that KRS 511.010 begins, "The following definitions apply in this chapter unless the context otherwise requires," [17] the majority holds that the definition of "premises" contained at KRS 511.010(3) does not apply to the use of the word "premises" in KRS 511.050,[18] KRS 511.070, or KRS 511.080, and instead *only* applies to the use of "premises" in KRS 511.090. It is a tenuous argument indeed which rests on the assumption that the drafters of the Kentucky Penal Code included, presumably for the sake of simplicity, a separate definition of "premises" which applies only one-fourth of the times the word is later used in the chapter.

---

14. *See* Majority Opinion at 9, at 726 (This conclusion is supported by the official commentary to the trespass statutes, which provides that since trespass of a building is included within the coverage of the higher degrees of criminal trespass, the "exclusive coverage [of third degree criminal trespass] is only for unlawful intrusions onto land." *Id.*).

15. 1974 Kentucky Crime Commission/LRC Commentary to KRS 511.060 (emphasis added).

16. *See* KRS 511.010(2) (" 'Dwelling' means a building which is usually occupied by a person lodging therein." *Id.*).

17. KRS 511.010.

18. "A person is guilty of possession of burglar's tools when he possesses any tool, instrument or other thing adapted, designed or commonly used for committing or facilitating the commission of an offense involving forcible entry into *premises* or theft by a physical taking . . . ." KRS 511.050(1) (emphasis added).

As KRS 505.020(2)(a) defines a lesser included offense as a crime "established by proof of the same or less than all the facts required to establish the commission of the offense charged"[19] our inquiry of whether criminal trespass in the third degree can, as a matter of law, ever be a lesser included offense of burglary in the first degree turns on whether "enters or remains unlawfully in a building" as used in the statute criminalizing burglary in the first degree establishes all of the ultimate facts necessary to make a prima facie case for criminal trespass in the third degree. In light of KRS 511.010(3)'s "building-inclusive" definition of "premises," and the Official Commentary which specifically references the overlap, the only conclusion I find possible is that, as a matter of law and logic, criminal trespass in the third degree may be a lesser included offense to burglary in the first degree.

The alternative conclusion reached by the majority opinion, that criminal trespass in the third degree is merely a "separate, uncharged" offense, requires us to embrace two inferences which I simply cannot accept: (1) The definition of "premises" found in KRS 511.010(3) is essentially meaningless; and (2) The drafters of the Kentucky Penal Code intended that virtually any defendant who commits a residential burglary is guilty of the additional offense of criminal trespass in the third degree for the period of time he or she walked through the yard before entering the home. The majority's conclusion simply allows for no double jeopardy bar which would prevent both a burglary conviction and a criminal trespass in the third degree conviction for the same conduct. Such a conclusion defies simple logic.

Dashielle argues that his testimony which denied that he entered the Andersons' home created reasonable doubt with respect to the charge of burglary in the first degree, but that the jury could have found him guilty of criminal trespass in the third degree because of his unauthorized entry onto the Andersons' premises. Although we have addressed issues in the past concerning whether trial testimony created a basis for the trial court to instruct on criminal trespass in the first degree as a lesser included offense to a burglary charge,[20] each of those cases focused on the evidence concerning the purpose for the intrusion, i.e., whether the defendant intended to commit a crime, but did not present issues concerning the nature of the area into or upon which the defendant unlawfully entered. Nonetheless, these holdings guide our examination of the evidence before the trial court, and, despite a great deal of inculpatory evi-

---

**19.** KRS 505.020(2)(a).

**20.** *See, e.g., Martin v. Commonwealth,* Ky., 571 S.W.2d 613, 614–5 (1978) (Convictions reversed for trial court's failure to instruct on First Degree Criminal Trespass where the defendants "admitted that they had entered [the victim's] home without her permission. However, they both denied they had committed a crime in the dwelling or had intended to do so. There was also an attempt to prove that both were too drunk at the time of the entry to form any culpable intent." *Id.* at 614); *Polk v. Commonwealth,* Ky., 574 S.W.2d 335, 338–9 (1978) (Trial court did not err in denying First Degree Criminal Trespass instruction because "the appellant never admitted being in the house. The house was thoroughly ransacked, and the appellant was identified as the one running from the house as soon as the officer arrived." *Id.* at 339.); *Commonwealth v. Sanders,* Ky., 685 S.W.2d 557, 558–9 (1985) (Conviction affirmed despite failure to instruct on lesser included offense of First Degree Criminal Trespass: "[T]he trial court must instruct the jury according to the evidence. Here, Sander's defense was alibi. We do not have testimony or circumstances that the jury could infer that there was presence in the house with no intent to commit a crime." *Id.* at 559.); *McClellan v. Commonwealth,* Ky., 715 S.W.2d 464, 466 (1986), cert. denied 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 986 (1987) (Reversing for trial court's failure to instruct on First Degree Criminal Trespass where the defendant testified "that his sole purpose in entering the room was to talk to his wife and to attempt to persuade her to return home with him. He repeatedly testified that he had no thought of harming his wife or the victim or of committing any crime whatsoever when he entered the room." *Id.*).

dence presented by the Commonwealth, I believe that Dashielle's testimony created a factual issue appropriate for jury resolution regarding whether Dashielle entered the Anderson home or merely trespassed on the surrounding property. As was the case in *McClellan v. Commonwealth*,[21] however, "[u]nfortunately, there was no instruction to the jury which would permit it to find that" [22] Dashielle's unlawful entry onto the Anderson's property was limited to a trespass upon their land. Accordingly, I believe the trial court's failure to instruct on the lesser included offense of criminal trespass in the third degree was error.

Although the majority opinion asserts that the jury's verdict with respect to the theft by unlawful taking charge in the indictment renders harmless any error with respect to the burglary charge, I cannot agree. While the Commonwealth frequently engages in a harmless error analysis, in this case, the Commonwealth's brief does not mention the words "harmless error" with respect to this allegation of error. In my opinion, the Commonwealth's failure to do so was not an oversight. Appellate courts can, at best, speculate about how a jury reached its verdict, and such speculation borders on pure guesswork when, as was the case here, the jury never had the opportunity to examine the defense raised by the defendant's theory of the case through the lens of proper jury instructions. This jury could have found liability on Dashielle's behalf for the charge of theft by unlawful taking without concluding that he entered the Anderson residence.[23] I concede the fact that there is a very real possibility that a jury upon remand would return the same verdict, but I'm unwilling to assume that result and deny Dashielle the opportunity to present his defense to the jury. Taken to its logi-

cal conclusion, the "harmless error" conclusion reached by the majority would eliminate the possibility of reversible error in any case where the trial court improperly failed to instruct on a lesser included offense.

Accordingly, I would reverse Dashielle's conviction for burglary in the second degree and remand that count of his indictment to the trial court for a new trial.

JOHNSTONE and STUMBO, JJ., join this opinion, concurring in part and dissenting in part.

---

**21.** *Supra* note 20 at 467.

**22.** *Id.*

**23.** The jury could have concluded that, without himself entering the residence, Dashielle

"t[ook] or exercise[d] control over [the Andersons'] moveable property ... with intent to deprive [them] thereof." *See* KRS 514.030.