RENDERED: APRIL 16, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1287-MR

TIMOTHY JOHN FELKER                               APPELLANT

                     APPEAL FROM FAYETTE CIRCUIT COURT
v.                HONORABLE JOHN E. REYNOLDS, JUDGE
                     ACTION NO. 18-CR-00524

COMMONWEALTH OF KENTUCKY                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, KRAMER, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Timothy John Felker brings this appeal from an August 12, 2019, final judgment of the Fayette Circuit Court sentencing Felker to one-year and six-months' imprisonment upon his conviction of second-degree terroristic threatening. We affirm.

       During the 2017-2018 school year, Felker was a senior enrolled in Paul Laurance Dunbar High School (high school) in Lexington, Kentucky. In

February 2018, the high school received numerous tips that Felker had threatened to shoot students and others at the high school. The principal of the high school informed the Lexington Police Department about the tips as to Felker. The police conducted an investigation and eventually seized an AR-15 firearm with numerous rounds of ammunition that belonged to Felker. The police interviewed Felker and students at the high school. During the interview, Felker admitted to threatening to shoot up the school and certain students.

In May of 2018, Felker was indicted by a Fayette County Grand Jury upon the offense of terroristic threatening in the second degree. A jury trial ensued in July 2019, and Felker was convicted of same. By final judgment and sentence of imprisonment entered August 12, 2019, Felker was sentenced to one-year and six-months' imprisonment. This appeal follows.

Felker contends that the circuit court erroneously failed to instruct the jury upon lesser-included offenses. In particular, Felker asserts that a jury instruction should have been given upon terroristic threatening in the third degree and harassment. As to third-degree terroristic threatening, Felker argues:

> [T]he defense requested an instruction on Terroristic
> Threatening, Third Degree. The only difference in
> elements in the instructions for Terroristic Threatening,
> Third Degree and Second Degree would be a finding
> that the defendant's threat would take place at a school.
> Terroristic Threatening, Third Degree meets both the
> statutory test outlined in [Kentucky Revised Statutes

(KRS)] 505.020, as well as the broader test from *Hall*[1] and *Perry*.[2] Evidence was adduced at trial that Timothy made statements of intent to shoot specific students. The jury could have chosen to believe that the nature of these threats was not tied to the school and could have convicted on the lesser-included offense. Therefore, it was error to deny the instruction, and the defendant was denied due process by the Court in doing so. Reversal is appropriate.

Felker's Brief at 16-17.

As to harassment, Felker maintained:

The primary difference in this offense of Harassment and Terroristic threatening, Second Degree is the intent of the defendant. In the case of Terroristic Threatening, the defendant intends to threaten another person; with Harassment, the defendant intends to intimidate, harass, annoy, or alarm another person. Throughout the trial, the defense argued that Timothy's statements were idle talk or jesting; a bad sense of humor designed to annoy other students. The defense relied upon the case of *Thomas v. Com*[*monwealth*], 574 S.W.2d 903 (Ky. App. 1978) which dealt with the constitutionality of KRS 508.080. . . .

Students at trial testified that they were not sure whether Timothy's statements were jokes or were serious. The jury should have been allowed to make a determination on this issue. The legislature created different levels of culpability based upon the intent of the accused. Those that intend a statement to be a threat are culpable for Terroristic Threatening, Second Degree, a Class D Felony. Those that make statements of intent to harm, but do so only to annoy, are guilty of Harassment,

---

[1] *Hall v. Commonwealth*, 337 S.W.3d 595 (Ky. 2011).

[2] *Perry v. Commonwealth*, 839 S.W.2d 268 (Ky. 1992).

a violation. By denying the defendant the right to present this defense, his due process rights were violated. The jury was given no option to consider the defense's theory that Timothy merely harassed; he did not threaten. . . .

Felker's Brief at 17-18.

Thus, Felker maintains that the circuit court committed reversible error by failing to instruct the jury upon third-degree terroristic threatening and harassment.

It is well established that a jury instruction upon a lesser included offense is proper when "a reasonable juror could entertain a reasonable doubt of the defendant's guilt on the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." *Osborne v. Commonwealth*, 43 S.W.3d 234, 244 (Ky. 2001). Also relevant to this appeal, KRS 505.020(2) provides that an offense is considered to be lesser included if:

> (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
>
>  . . . .
>
> (c) It differs from the offense charged only in the respect that a lesser kind of culpability suffices to establish its commission[.]

KRS 505.020(2)(a) and(c); *see Hall v. Commonwealth*, 337 S.W.3d 595, 605 (Ky. 2011).

-4-

Second-degree terroristic threatening is found in KRS 508.078 and provides, in relevant part:

> (1) A person is guilty of terroristic threatening in the second degree when, other than as provided in KRS 508.075, he or she intentionally:
>
> (a) With respect to any scheduled, publicly advertised event open to the public, any place of worship, or any school function, threatens to commit any act likely to result in death or serious physical injury to any person at a scheduled, publicly advertised event open to the public, any person at a place of worship, or any student group, teacher, volunteer worker, or employee of a public or private elementary or secondary school, vocational school, or institution of postsecondary education, or to any other person reasonably expected to lawfully be on school property or at a school-sanctioned activity, if the threat is related to their employment by a school, or work or attendance at school, or a school function. A threat directed at a person or persons at a scheduled, publicly advertised event open to the public, place of worship, or school does not need to identify a specific person or persons or school in order for a violation of this section to occur[.]

Third-degree terroristic threatening is set forth in KRS 508.080 and reads, in relevant part:

> (1) Except as provided in KRS 508.075 or 508.078, a person is guilty of terroristic threatening in the third degree when:
>
> (a) He threatens to commit any crime likely to result in death or serious physical injury to another

-5-

person or likely to result in substantial property damage to another person[.]

And, harassment is codified in KRS 525.070, which provides, in relevant part:

> (1) A person is guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person, he or she:
>
> . . . .
>
> (f) Being enrolled as a student in a local school district, and while on school premises, on school-sponsored transportation, or at a school-sponsored event:
>
> . . . .
>
> 3. Creates a hostile environment by means of any gestures, written communications, oral statements, or physical acts that a reasonable person under the circumstances should know would cause another student to suffer fear of physical harm, intimidation, humiliation, or embarrassment.

As to third-degree terroristic threatening, Felker maintains evidence was introduced that he threatened to shoot specific students, and the jury could have found that these threats were not associated with school. For this reason, Felker believes he was entitled to a jury instruction upon third-degree terroristic threatening.

However, the evidence introduced at trial was that Felker threatened to shoot up the school and target particular students at the school. For instance,

there was testimony that Felker indicated that a specific student would be shot first. At trial, the evidence as a whole demonstrated that Felker threatened to shoot students during a school shooting event. Therefore, we do not believe a rational juror could find that Felker's threats were unrelated to a school setting. Consequently, the circuit court did not err by failing to give a jury instruction upon third-degree terroristic threatening.

As to harassment, Felker argues that it is a lesser included offense of second-degree terroristic threatening. Under second-degree terroristic threatening, Felker maintains that a defendant must intend to threaten to commit an act that is likely to result in death/serious physical harm; whereas, with harassment a defendant must only intend to intimidate, harass, annoy or alarm another person.

To be considered a lesser included offense, the lesser offense must differ from the greater only in respect to a lesser state of culpability or the lesser offense must be established by evidence of the same or less than all the facts required to prove the greater offense. With harassment, a defendant must have intended to intimidate, harass, annoy, or alarm; in contrast, with second-degree terroristic threatening, the defendant must intend to threaten to commit any act likely to cause death/serious physical harm. More importantly, harassment requires proof of facts that are not required for second-degree terroristic

-7-

threatening.  Notably, the facts must demonstrate that a defendant created a hostile environment at school to be guilty of harassment.

Under second-degree terroristic threatening, it is not necessary to introduce evidence that a defendant created a hostile environment at school with his threats.  Consequently, it is evident that harassment requires proof of facts not required under second-degree terroristic threatening.  In view thereof, we conclude that harassment is not a lesser included offense of second-degree terroristic threatening.  *See Colwell v. Commonwealth*, 37 S.W.3d 721, 726 (Ky. 2000).[3]

Felker next asserts that the Commonwealth committed prosecutorial misconduct during closing argument.  Felker maintains the Commonwealth misstated the law by stating:

> "I'm going to shoot up the school, and I'm going to start with you.  I wanted to hurt people by shooting them."
> When the defendant said these words he was guilty of Terroristic Threatening, Second Degree.  Saying the words is the crime. The defendant is guilty.
>
> . . . .
>
> The legislature made the utterance of these words intentionally, and these types of statements even if the defendant had no intention even if the defendant had no intention [sic] of carrying out those acts.  Saying that you are going to shoot up the school is illegal, just as yelling

---

[3] *Colwell v. Commonwealth*, 37 S.W.3d 721, 726 (Ky. 2000), the Supreme Court held that "if the lesser offense requires proof of a fact not required to prove the greater offense, then the lesser offense is not included in the greater offense, but is simply a separate, uncharged offense."

> fire in a crowded theater . . . saying those words
> intentionally is the crime.

Felker's Brief at 20 (footnotes omitted). Felker points out that he objected to the improper closing argument, but the circuit court overruled the objection. Felker maintains that KRS 508.078(1)(a) does not apply if the threat merely was made jokingly or in jest. Rather, Felker asserts that KRS 508.078(1)(a) requires the intent that the statement be a threat. Felker maintains that the Commonwealth misled the jury in closing arguments as to the intent required by KRS 508.078(1)(a), and the circuit court committed reversible error by denying his objection during closing argument.

Prosecutorial misconduct is defined as "a prosecutor's improper or illegal act involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Murphy v. Commonwealth*, 509 S.W.3d 34, 49 (Ky. 2017) (quoting *Commonwealth v. McGorman*, 489 S.W.3d 731, 741-42 (Ky. 2016)). Prosecutorial misconduct can occur during closing argument. *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016). And, "[i]f the misconduct is objected to, we will reverse on that ground if proof of the defendants guilt was not such as to render the misconduct harmless, and if the trial court failed to cure the misconduct with a sufficient admonition to the jury." *Murphy*, 509 S.W.3d at 49 (quoting *Duncan v. Commonwealth*, 322 S.W.3d 81, 87 (Ky. 2010)).

We must also consider the closing argument as a whole and that counsel enjoys wide latitude. *Murphy*, 509 S.W.3d at 50.

Viewing the closing argument as a whole, we do not believe the Commonwealth committed prosecutorial misconduct. The Commonwealth emphasized that Felker intentionally made threats to shoot up the school and students. The Commonwealth stated that these threats were not made jokingly but were made with intent. As support, the Commonwealth pointed to Felker's repeated statements that he was going to shoot up the school and certain students. Also, the Commonwealth emphasized the AR-15 firearm Felker purchased with 450 rounds of ammunition, his claims of wanting to commit suicide, and students' testimony that they viewed Felker's threats as serious to the extent they were even frightened to go to school. Perhaps inartful at times, we cannot say that the Commonwealth's closing argument was improper. Even if it were improper, no reversible error occurred as the Commonwealth presented overwhelming evidence of Felker's guilt.

Felker finally asserts that the circuit court improperly admitted testimony during trial resulting in reversible error. The Commonwealth called Jill Felker, Felker's mother, during its case in chief. Felker, particularly points to the following testimony of Jill:

-10-

**Prosecutor:** When the police came to your house on February 17th of 2017, what did you say about your son in comparison to Nikolas Cruz?

**Jill Felker:** When something like that happens, I watch CNN a lot. I mean I saw comparisons.

**Prosecutor:** What did you say?

**Jill Felker:** They were both cutters. Neither one had been adjudicated as mentally ill. But Timothy doesn't run around outside in his underwear wearing a MAGA hat like Nikolas Cruz was reported to have done.

**Court:** I think the question is "what did you say to the police that were there at the time?"

**Jill Felker:** I just said there were similarities. They both had AK . . . no AR-15, not AK-47.

**Court:** You told the police that?

**Jill Felker:** I don't recall saying they both had an AR-15 because I think everybody knew they both did . . .

**Court:** The question is "what did you tell the police when they . arrived regarding Nikolas Cruz?"

**Jill Felker:** I just said I had watched a lot of it. Timothy . thought it was messed up that he had shot up the school, and that basically they were both cutters. You know I know other people who have been cutters. It doesn't mean they are going to go shoot up a school somewhere.

**Prosecutor:** Did you tell the police, "Yeah. I heard that Nikolas Cruz had done that too. The similarities, they just keep coming."

-11-

**Jill Felker:**  Had done what too?

**Prosecutor:**  Did you say "Yeah.  I heard that Nikolas Cruz had done that too.  The similarities, they just keep coming."

**Jill Felker:**  Did what too?

**Prosecutor:**  When the police came to your home did you draw similarities between your son and Nikolas Cruz?

**Jill:**  Yes . . . but my son did not and had no intentions of shooting up the school.

**Prosecutor:**  And Nikolas Cruz is the Marjorie Stone Douglas Parkland, Florida School Shooter?

**Jill Felker:**  Yes.

Felker's Brief at 8-9.  Felker argues the above testimony should have been excluded because it was highly prejudicial.  Felker maintains that Jill's comparison of Felker to the Parkland school shooter, Nikolas Cruz, only served to inflame the passion of the jury.  Thus, Felker alleges it should not have been admitted due to its prejudicial effect.

Kentucky Rules of Evidence (KRE) 401 defines relevant evidence as having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  However, pursuant to KRE 403, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of undue

-12-

prejudice[.]"  It must be emphasized that "[t]he task of weighing the probative value and undue prejudice of proffered evidence is inherently factual and, therefore, within the discretion of the trial court."  *Ross v. Commonwealth*, 455 S.W.3d 899, 910 (Ky. 2015).  The improper admission of evidence is considered harmless error "if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error."  *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009).

Upon Felker's objection to Jill's testimony, the Commonwealth explained to the court that the testimony was highly relevant as it constituted her observation of her son and effectively rebutted Felker's defense at trial that his alleged threats were mere jokes.  Although relevant, we do believe that Jill's testimony was prejudicial, and when weighing the probative value against its prejudicial effect, we are inclined to conclude that the circuit court abused its discretion under KRE 403.  Nonetheless, we also conclude that the error was harmless.  Jill's testimony comparing Felker to the Parkland school shooter lasted only minutes.  Moreover, Jill also testified that she did not believe her son would engage in a shooting spree at school.  Upon the whole, we conclude with fair assurance that the jury's guilty verdict was not substantially swayed by Jill's testimony.  *See Winstead*, 283 S.W.3d at 689.

For the foregoing reasons, the final judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Bradley Clark
Lexington, Kentucky

R. Tucker Richardson
Lexington, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky
Frankfort, Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky