RENDERED: OCTOBER 17, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

### NO. 2024-CA-0517-MR

TYRONE WILLIAMS                                             APPELLANT

|  |  |  |
|---|---|---|
|  | APPEAL FROM HENDERSON CIRCUIT COURT |  |
| v. | HONORABLE KAREN L. WILSON, JUDGE |  |
|  | ACTION NO. 23-CR-00435 |  |

COMMONWEALTH OF KENTUCKY                           APPELLEE

### OPINION
### AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, CETRULO, AND A. JONES, JUDGES.

JONES, A., JUDGE: Tyrone Williams appeals from the Henderson Circuit Court's judgment following conviction at his jury trial. The trial court sentenced Williams to a concurrent term of ten years' imprisonment after he was found guilty of complicity to third-degree assault, harassment, and for being a first-degree persistent felony offender. After a thorough review of the facts and the law, we affirm.

# I. BACKGROUND

At about 4:00 p.m. on August 9, 2023, Sgt. Lironda Jackson was working at the Henderson County Detention Center when she heard a disturbance coming from a cell occupied by the appellant, Williams, and his co-defendant, Stanley Ward. The inmates were upset because it appeared that money had disappeared from their electronic tablet accounts. Sgt. Jackson would later explain to the jury that inmates at the detention center rely on their tablets for an extensive array of services, including virtual visitation with their families, requesting medical assistance, and filing forms for requests or grievances. The inmates also use the tablets to access funds in their accounts while in jail.

Unfortunately, on this particular date, the inmates were temporarily unable to access funds because the detention center was switching to a different third-party service provider to handle those accounts. Sgt. Jackson tried to explain to Williams and Ward that officers at the detention center had no access or control over the funds in their accounts, nor were they able to assist with tablet errors. She informed the two men that they would have to wait until the next business day to contact someone with the ability to assist them with the tablets. Sgt. Jackson then left while a second officer, Sgt. Andrew Brickner, also attempted to explain the situation to them.

Not long afterward, Sgt. Jackson heard commotion resume from the same cell. She returned to check on the inmates and found that Williams and Ward had removed their shirts, thereby violating the detention center's policy against being "out of uniform" while in a cell. Williams and Ward were irate, cursing at the officers and demanding that the officers return funds to their tablet accounts. They created enough of a disturbance that it woke another inmate by the last name of Gibson,[1] who began engaging in the same behavior. Sgt. Jackson ordered Williams and Ward to get back into their uniforms, but they refused. She then called for backup from her fellow officers, and Sgt. Brickner was among those who responded to the scene.

Upon Sgt. Brickner's arrival, the plan was for him to assist Sgt. Jackson in placing the inmates in isolation for a short cooldown period, a standard procedure at the facility. Another officer approached Gibson for this purpose, who was compliant. He put his shirt back on and was escorted to isolation. Sgt. Brickner asked Ward to turn around so he could be placed in restraints and escorted to isolation, but Ward jumped up on the top bunk instead. Sgt. Brickner then told Ward to come down from the bunk, or the officers would assist him in coming down from the bunk. Ward declined to cooperate, informing Sgt. Brickner that he "wasn't going to do shit."

---

[1] The parties only refer to Mr. Gibson by his surname in their briefs, and we did not see any reference to his first name in our review of the record.

When Sgt. Brickner approached the bunk, Ward leaped down and struck Sgt. Brickner in the right eye. A very brief altercation ensued. Williams, who was standing behind Sgt. Brickner, made physical contact with Sgt. Brickner. Sgt. Jackson would later testify that she believed Williams punched Sgt. Brickner, though she accepted the Commonwealth's correction that Williams had actually merely grabbed Sgt. Brickner. Sgt. Brickner, for his part, stated that Williams grabbed his midsection from behind, and he believed this was an attempt to aid Ward. Sgt. Jackson tased Williams, which then allowed Sgt. Brickner to restrain him. Meanwhile, another officer subdued Ward. The entire fight lasted about eight seconds. Sgt. Brickner would later admit that he struck the inmates with his closed fist in order to defend himself during the altercation. Afterward, both inmates were offered medical assistance before being placed in isolation, and they were then moved to disciplinary housing. Sgt. Brickner suffered a black eye and a bruised cheekbone.

As a result of this incident, the Henderson County grand jury indicted Williams on three charges. First, either alone or in complicity with Ward, he committed the offense of third-degree assault when he intentionally caused or attempted to cause physical injury to Sgt. Brickner.[2] Second, either alone or in complicity with Ward, Williams committed the offense of harassment when he

---

[2] Kentucky Revised Statute (KRS) 508.025, a Class D felony.

-4-

used offensively coarse utterances or abusive language against the detention center staff with the intent to intimidate, harass, annoy, or alarm.[3] Third, Williams was charged as a first-degree persistent felony offender (PFO-1).[4]

Williams and Ward were tried together. The Commonwealth presented testimony from several corrections officers, consistent with the foregoing narrative. The jury also viewed video footage of the events leading up to the altercation in the cell, as well as the altercation itself. The defense offered no evidence, relying upon the arguments of counsel that Williams "only intended to protect Mr. Ward from being beaten by an enraged guard." (Appellant's Brief at 7.) The jury was given instructions on self-protection and protection of another. Despite the efforts of counsel, at the end of the one-day joint trial, the jury found Williams guilty of complicity to third-degree assault and harassment. The jury recommended a one-year sentence on the assault charge, which they enhanced to a ten-year term when they also found Williams guilty of being a PFO-1. The trial court sentenced Williams to a concurrent term of ten years' imprisonment, in accordance with the jury's recommendation. This appeal followed.

---

[3] KRS 525.070, a violation punishable by a fine of up to $250, per KRS 534.040.

[4] KRS 532.080.

## II. ANALYSIS

Williams presents three issues on appeal. First, he argues the trial court erroneously denied his motion for a directed verdict of acquittal on the basis of insufficient evidence. Second, Williams argues the trial court erroneously denied his request to give an instruction on harassment as a lesser-included offense for third-degree assault. Third, and finally, Williams argues the trial court erred when it summarily denied his motion to sever his trial from that of Ward, his co-defendant. We consider each issue in turn below.

In his first issue on appeal, Williams contends the trial court erroneously failed to grant his motion for a directed verdict, arguing the Commonwealth failed to provide sufficient evidence of his intent to cause physical injury to Sgt. Brickner, or to aid Ward in doing so, which would be necessary to convict him of complicity to third-degree assault. Williams argues that Sgt. Jackson's initial testimony that Williams punched Sgt. Brickner was not supported by other testimony and contradicted her incident report. Williams also argues the surveillance video only shows him reaching out to Sgt. Brickner from behind.

In a motion for directed verdict, "the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth" and "must assume that the evidence for the Commonwealth is true[.]" *Hall v. Commonwealth*, 645 S.W.3d 383, 392 (Ky. 2022) (quoting *Commonwealth v.*

*Benham*, 816 S.W.2d 186, 187 (Ky. 1991)). Furthermore, to defeat a preserved motion for directed verdict, "the Commonwealth must only produce 'more than a mere scintilla of evidence.'" *Lackey v. Commonwealth*, 468 S.W.3d 348, 352 (Ky. 2015) (quoting *Benham*, 816 S.W.2d at 187).

The evidence at trial showed that Ward intentionally struck Sgt. Brickner, resulting in a black eye and bruising. "Third-degree assault, as defined in KRS 508.025, requires a showing that 'the actor . . . intentionally causes or attempts to cause physical injury to . . . [a] state, county, city, or federal peace officer[.]'" *Montgomery v. Commonwealth*, 505 S.W.3d 274, 278 (Ky. App. 2016). The Commonwealth successfully met the elements of third-degree assault, at least as far as Ward's actions were concerned. To show Williams acted with complicity to the assault, the Commonwealth must show that Williams "aid[ed], counsel[ed], or attempt[ed] to aid" Ward in committing the offense. KRS 502.020(1)(b).

Sgt. Brickner testified that, while he was engaged in a physical altercation with Ward, Williams grabbed him from behind and attempted to restrain him. The jury also viewed video evidence of the altercation. Williams' motives in grabbing Sgt. Brickner were a matter of interpretation by the jury sitting as the factfinder. "In assessing evidence as to sufficient proof of intent in criminal cases, the requisite intent may be determined from surrounding circumstances. All

-7-

elements of a crime, including intent, can be proven by circumstantial evidence." *Commonwealth v. O'Conner*, 372 S.W.3d 855, 857 (Ky. 2012) (citations omitted). The jury might have found Williams not guilty, if they had accepted the defense's view that his actions were in protection of another. The trial court instructed the jury as to that possible outcome. However, the jury was not obliged to view the evidence in this manner. Instead, they favored the Commonwealth's interpretation that Williams was aiding Ward in committing third-degree assault, and there was more than a scintilla of evidence supporting this interpretation. The trial court did not err in declining the motion for a directed verdict.

For his second issue on appeal, Williams contends the trial court erroneously denied his request to give an instruction on harassment as a lesser-included offense for third-degree assault. "Generally, a trial court is obligated to instruct the jury upon every theory reasonably supported by the evidence. Each party to an action is entitled to an instruction upon his theory of the case if there is evidence to sustain it." *Jackson v. Commonwealth*, 481 S.W.3d 794, 797 (Ky. 2016) (internal quotation marks and citation omitted). "[A] trial court's decision on whether to instruct on a specific claim will be reviewed for abuse of discretion." *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015), *overruled on other grounds by University Medical Center, Inc. v. Shwab*, 628 S.W.3d 112 (Ky. 2021). "[A] trial court abuses its discretion when its decision is arbitrary, unreasonable, unfair,

or unsupported by sound legal principles." *Id.* at 203 (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

Williams offered the trial court a proposed instruction for harassment as a lesser-included offense of third-degree assault which would allow the jury to find that Williams grabbed Sgt. Brickner from behind with the intent to "intimidate, harass, annoy or alarm" him. (Record (R.) at 47.) The harassment statute, KRS 525.070, is not restricted to speech alone, as it provides that an individual may be guilty of harassment when he or she "[s]trikes, shoves, kicks, or otherwise subjects [the victim] to physical contact" with the "intent to intimidate, harass, annoy, or alarm[.]" KRS 525.070(1)(a). Williams asserts that this physical contact version of harassment was appropriate based on the facts adduced at trial. However, the Commonwealth points out that we have previously held in an unpublished case that harassment is not a lesser-included offense of third-degree assault.

In *Webb v. Commonwealth*,[5] we began by quoting the Kentucky Supreme Court for "[t]he fact that the evidence would support a guilty verdict on a lesser uncharged offense does not establish that it is a lesser included offense of the charged offense." *Webb*, 2014 WL 5314704, at *7 (quoting *Houston v.*

---

[5] No. 2013-CA-000339-MR, 2014 WL 5314704 (Ky. App. Oct. 17, 2014). Per the Kentucky Rules of Appellate Procedure (RAP) 41, we discuss this unpublished case only for its persuasive value on the appropriate points of law and not as binding authority.

-9-

*Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998)). We continued our analysis by referencing KRS 505.020, the General Assembly's statute regarding prosecution of multiple offenses: "a lesser included offense is one which 'is established by proof of the same or less than all the facts required to establish the commission of the offense charged.'" *Id.* (quoting KRS 505.020(2)(a)). Finally, we quoted the Kentucky Supreme Court's decision in *Colwell v. Commonwealth*, 37 S.W.3d 721 (Ky. 2000): "[I]f the lesser offense requires proof of a fact not required to prove the greater offense, then the lesser offense is not included in the greater offense, but is simply a separate, uncharged offense." *Id.* (quoting *Colwell*, 37 S.W.3d at 726). Based on these considerations, it was our view that "because the elements of third-degree assault and harassment have different *mens rea* and actions, one is not the lesser included offense of the other." *Id.*

Although *Webb* was unpublished, its reasoning is persuasive. Third-degree assault requires the intent to cause physical injury to an employee of the detention center. KRS 508.025(1)(b). Harassment does not require the intent to cause physical injury. And, as we discussed in *Webb*, harassment requires the distinctive intent "to intimidate, harass, annoy, or alarm another person[.]" *Webb*, 2014 WL 5314704, at *7 (quoting KRS 525.070(1)). Although it is not binding, we see no reason to depart from our reasoning in *Webb*. Because each offense requires proof of a different element not found in the other, we hold that

-10-

harassment is not a lesser-included offense of third-degree assault. We discern no abuse of discretion in the trial court's decision not to provide the requested instruction.

For Williams' third and final issue on appeal, he contends the trial court erred when it summarily denied his motion to sever his trial from that of Ward, his co-defendant. In a pretrial hearing on February 12, 2024, the trial court heard the Commonwealth's motion to consolidate the indictments for Williams and Ward for jury trial. The Commonwealth's motion pointed out that "both indictments [arose] out of the same facts, where both Defendants were charged with assaulting the same corrections employee on or about August 9, 2023 in the Henderson County Detention Center." (R. at 22.) When asked during the hearing, defense counsel made no objection to the motion to consolidate but noted there may be *Bruton*[6] issues to address prior to trial. The trial court ruled that the cases were consolidated and issued a written order to that effect the following day. (R. at 24.)

Less than one month later, however, defense counsel made an oral motion in open court to sever the two trials. The trial court replied that it did not have a motion to consolidate or sever at that time, whereupon the Commonwealth

---

[6] "Under *Bruton v. United States*, [391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968),] a trial court may not admit a non-testifying co-defendant's *testimonial* out-of-court statement as evidence against the accused in their joint trial." *Fisher v. Commonwealth*, 620 S.W.3d 1, 6 (Ky. 2021).

-11-

reminded the trial court that the two cases were already consolidated. After a moment of silence, the trial court agreed, stating that the cases were already consolidated and so it was going to deny the motion to sever. In response, defense counsel only stated, "Yes, Judge."

The Kentucky Supreme Court provided the following guidance on joint trials in *Sexton v. Commonwealth*, 647 S.W.3d 227 (Ky. 2022):

> Under Rule of Criminal Procedure (RCr) 6.20, two or more defendants may be jointly tried if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." RCr 8.31 requires the trial court to "grant separate trials of defendants or provide whatever other relief justice requires" if it appears that a defendant will be prejudiced by a joint trial. To warrant severance, a joint trial must be so prejudicial as to be "unnecessarily or unreasonably hurtful." *Elam v. Commonwealth*, 500 S.W.3d 818, 822 (Ky. 2016) (quoting *Ratliff v. Commonwealth*, 194 S.W.3d 258, 264 (Ky. 2006)) (internal quotation marks omitted).

*Id*. at 230. "A trial court's denial of severance will be upheld absent a showing of actual prejudice . . . and a clear abuse of discretion by the judge. . . . Accordingly, [t]he trial judge has considerable discretion in ruling on such a motion[.]" *Id*. (internal quotation marks and citations omitted).

The most striking aspect of this issue is that Williams has failed at both the trial and appellate levels to make any argument regarding how he was prejudiced by the joint trial. Defense counsel offered no arguments when the trial

court denied the motion in open court, and nothing prevented counsel from filing a written motion and supporting argument with the trial court, either before or after the summary denial of the motion. And perplexingly, Williams' briefed argument on appeal centers around how the trial court abused its discretion when it summarily ruled on his oral motion, preventing him from presenting an argument on prejudice, yet it *also* fails to advance any substantive arguments regarding how the joint trial resulted in unfair prejudice. At most, Williams asserts that the trial's focus on Ward's more aggressive statements and behavior was prejudicial, but this is a conclusory argument. "We will not search the record to construct [the appellant's] argument for him, nor will this Court undergo a fishing expedition to find support for underdeveloped arguments." *Applegate v. Commonwealth*, 577 S.W.3d 83, 90 (Ky. App. 2018).

Because Williams has not shown how joinder was unfairly prejudicial to his case, we cannot say the trial court abused its discretion when it denied his motion to sever.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.


ALL CONCUR.

BRIEF FOR APPELLANT:

Molly Mattingly
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General
Frankfort, Kentucky